## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IMATION CORPORATION, a Delaware
corporation,

Plaintiff,

Civ. No. _07 cv 3668, DWF/SRN_

v.

KONINKLIJKE PHILIPS ELECTRONICS
N.V., a foreign corporation, U.S. PHILIPS
CORPORATION, a New York corporation,
and PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION, a Delaware
corporation.

Defendants.

**COMPLAINT FOR
DECLARATORY JUDGMENT**

**Jury Trial Demanded**

Plaintiff Imation Corp. ("Imation") seeks a declaratory judgment that it was assigned and is therefore properly operating under a 1995 Patent Cross-License Agreement ("CLA") between Minnesota Mining and Manufacturing Company ("3M") and Koninklijke Philips Electronics N.V., U.S. Philips Corporation, and Philips Electronics North America Corporation (collectively "Philips"). As the rightful successor to the CLA, Imation further asks this Court to declare that its subsidiaries, as defined by the CLA, are likewise operating properly under the rights granted to them under the CLA. In particular, Imation seeks a declaratory judgment that its subsidiaries, including Global Data Media FZ-LLC ("GDM") and Memorex International, Inc. ("Memorex") may validly exercise the royalty-free have-made rights granted under the CLA. In addition, Imation seeks a declaratory judgment that certain patented DVD technology is covered by the CLA, that Imation does not infringe any valid claim of United States Patent Nos. 6,538,982 or 6,952,388, and that both of these patents are invalid.

**SCANNED**
AUG 13 2007
U.S. DISTRICT COURT MPLS

1

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Imation is a Delaware corporation with its principal place of business in Oakdale, Minnesota.

2.      Defendant Koninklijke Philips Electronics N.V., is a foreign corporation with its principal place of business in Eindhoven, Netherlands.

3.      Defendant U.S. Philips Corporation is a Delaware corporation with its principal place of business in New York, New York.

4.      Defendant Philips Electronics North America Corporation is a Delaware corporation with its principal place of business in New York, New York.

5.      This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the patent laws of the United States, 35 U.S.C. §§ 101, *et. seq.*

6.      This Court has subject matter jurisdiction under the provisions of 28 U.S.C. § 1338(a) and 28 U.S.C. § 1367.

7.      Venue is proper in this Court under 28 U.S.C. § 1391 and § 1400.

8.      Imation previously filed a Complaint for Declaratory Judgment against Philips on October 27, 2006.  That matter—regarding several of the aforementioned issues between the parties—was venued in the District Court of Minnesota, civil case number 0:06-cv-04326-JRT-JJG.

9.      The parties began settlement negotiations after the Complaint was filed October 27, 2006.  To facilitate those negotiations, the parties signed a Standstill Agreement on February 26, 2007 ("Standstill Agreement"), stipulating to several terms and conditions, including notification procedures in the event of an impasse in negotiations and venue upon re-litigation.

2

10.     In accordance with the terms and conditions of the Standstill Agreement, Imation dismissed its Complaint for Declaratory Judgment without prejudice on February 28, 2007, and continued its participation in settlement negotiations with Philips.

11.     Despite ongoing attempts at settlement, Philips sent a written Impasse Notice to Imation on July 31, 2007.  Imation reasonably apprehends suit in accordance with the Standstill Agreement, notifying Philips of the same in its own Impasse Notice on August 3, 2007.   In light of these developments and the reasonable apprehension involved, Imation presents the following actual and interrelated controversies to the Court:

### The 3M—Philips Cross-Licensing Agreement

12.     In 1995, 3M entered into a Patent Cross-Licensing Agreement for Optical and Magnetic-Optical Information Storage and Retrieval Technology (identified earlier as the "CLA") with Philips, which became effective March 1, 1995.

13.     As part of the CLA, Philips granted 3M and its successors a royalty-free license under Philips' patents to "make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of" certain defined products. The grant was reciprocal; 3M granted similar rights in optical technology to Philips.

14.     The parties to the CLA clearly defined various terms applicable to the contractual relationship between them, including "optical storage medium," "single layer," "multiple layer," "recordable/erasable optical medium," "write-once optical medium," "read-only optical medium," "previously licensed products," "optical drive and optical drive component," "optical drive accessory," "optical-to-storage medium accessory," "licensed products," "licensed process," "licensed patents," and "subsidiary."

15.     In defining "licensed patents," the parties to the CLA agreed that the patents covered by the agreement include "all patents, utility models, inventor certificates, and design patents and registrations of all countries of the world (including any applications, continuations, continuations-in-part, divisionals, reissues, reexamined patents, or extensions thereof)" that are owned by the party or any subsidiary, relate to optical or magneto-optical information storage and retrieval technology, do not require the licensing party to pay any royalties to a third party, and have a filing date or claim priority before March 1, 2000.

16.     In defining "subsidiary," the parties to the CLA agreed that a subsidiary of either 3M or Philips shall mean "any corporation, firm, partnership, proprietorship, or other form of business organization as to which the party now or hereafter has more than a 50% ownership or, if not more than 50% ownership, then the maximum ownership interest it is permitted to have in the country where such business organization exists."

17.     Based on the CLA, either party can utilize the patents of the other party, on a royalty-free basis, for most optical disc storage media formats and retrieval technology.

18.     The CLA includes both CD and DVD technologies.  DVD is an optical disc storage media format that can be used for data storage, including movies with high video and sound quality.  DVDs resemble compact discs: their physical dimensions are the same—12cm or the mini 8cm—but they are encoded in a different format and at a much higher density.

19.     Article 1, Sections 1 through 5 of the CLA defines "optical storage medium," "single layer," "multiple layers," "recordable/erasable optical medium,"

4

"write-once optical medium," "read-only optical medium," "previously licensed product(s)," "optical drive," "optical drive component," "optical drive accessory," and "optical storage medium accessory." All of these definitions are general and broad, clearly encompassing DVD technology.

20. The parties to the CLA agreed to grant royalty-free licenses to each other. Pursuant to Article 2, Section 2 of the CLA, Philips agreed to grant to 3M and its subsidiaries "a personal, non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under PHILIPS LICENSED PATENTS to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of LICENSED PRODUCTS."

21. Philips further agreed to grant 3M and its subsidiaries "a personal, non-exclusive, indivisible, non-transferable, irrevocable, worldwide royalty-free license under PHILIPS LICENSED PATENTS to practice any LICENSED PROCESS in the course of making, having made, making for others, using, leasing, distributing, offering to sell, selling, importing, or otherwise disposing of LICENSED PRODUCTS."

22. Article 3 of the CLA, entitled Term Of Patent License Grants, provides that licenses granted under Article 2 commenced on the effective date of the agreement, which is March 1, 1995.

23. Article 3 further provides that the patent licenses granted under the CLA are to continue as to each licensed patent for the life of the patent, or for a shorter time period when imposed in any governed country by the government of that country.

24. The rights and licenses granted in the CLA were, pursuant to Article 9, Section 6, personal and could not be assigned, sublicensed, or otherwise transferred

5

without the written consent of the granting party. "However, such rights and licenses may be assigned, licensed, or transferred to an entity acquiring substantially all of the business of a party to which this agreement pertains, provided that such party promptly shall send written notice to that effect to the other party." Consent from the other party was not necessary for purposes of such an assignment, license, or transfer.

### The Imation Spin-Off

25.     In November 1995, 3M announced plans to create a new publicly owned company from several of 3M's existing information technology businesses. The spin-off company was to be comprised of 3M's Data Storage, Medical Imaging and Photo Color Systems, Printing and Publishing Systems, and Hardgoods and Electronics Support Businesses. 3M's Data Storage business contained substantially all of 3M's business pertaining to the CLA when it became a part of Imation.

26.     On April 16, 1996, the new company was named Imation Corp. 3M subsequently notified customers and suppliers, including Philips, that all of their agreements with 3M relevant to the business referenced in paragraph 25 above would be assigned to Imation. The new company was officially launched on July 1, 1996.

27.     Between 1996 and the present, Imation has continuously manufactured, sourced from third parties, and distributed optical disc products under the terms of the CLA. Philips has at all times through this period been aware that Imation has manufactured, sourced from third parties, and distributed optical disc products under the terms of the CLA.

### Imation's Assistance to Philips in Other Judicial Proceedings

28.     In 2002, Philips brought an action before the International Trade Commission ("ITC") to stop the importation of certain optical media discs. This action

was brought against several Taiwanese companies and their distributors in the United States. Philips alleged that these companies were involved in the unlawful sale and importation of CD-R and CD-RW discs that infringed upon patents held by Philips without paying royalties for distribution of such CD products into the United States.

29. Philips requested and received Imation's assistance in providing information, in the form of documentation and otherwise, supporting Philips' contentions before the ITC.

30. In filings with the ITC, Philips acknowledged that Imation is a domestic licensee of CD-R and CD-RW discs. Philips successfully argued to the ITC that Imation's status as a Philips licensee supported Philips' claim of jurisdiction to bring the action before the ITC.

### Pre-2005 Inquiries Regarding the CLA

31. Between 1995 and 2005, there were a number of direct communications between Imation and Philips affirming the scope and effect of the CLA. Imation has relied upon these communications in its business decisions. Examples of these confirmations include the following:

    (a)    After a March 11, 1999, correspondence sent by Imation requesting confirmation that CD-R and CD-RW drives and media were covered by the CLA, a Philips representative clearly acknowledged in writing that CD-R recorders, CD-R discs, CD-RW recorders, and CD-RW discs were licensed royalty-free.

    (b)    On November 24, 2002, Philips again confirmed in writing that Imation was licensed for CD-R and CD-RW discs. Philips also confirmed that Imation would not be a defendant in the ITC action and expressed Philips' appreciation for Imation's continued support in the proceeding.

    (c)    After a December 12, 2002 Imation query, a Philips representative confirmed in writing that the CLA applied to "DVD-recordable/rewritable discs under all Phillips' patents which have

7

> or are entitled to a filing date prior to March 1, 2000." The Philips representative cited specific provisions of the CLA in making this representation, including Articles 1, Sections 3, 4, and 12 as well as Article 4.

32.     Since its inception, Imation has conducted business with Philips on a consistent and ongoing basis. For nearly ten years, Philips did not question the corporate succession rights of Imation under the CLA. In 2005, Philips for the first time suggested the CLA had not been properly assigned to Imation.

## The Moser Baer and Imation Relationship

33.     On February 25, 2003, Imation publicly announced it was forming a global joint venture company, Global Data Media FZ-LLC ("GDM"), with Moser Baer India Ltd. ("Moser Baer").

34.     Moser Baer is headquartered in New Delhi, India and was incorporated in 1983. The company is a world leader in the manufacture of removable data storage media, including a broad range of floppy discs, CDs, and DVDs. It is one of India's leading technology companies and is among the top three manufacturers of recordable optical storage discs.

35.     Moser Baer produces a broad range of floppy disks, CDs, and DVDs. It has a market presence in over 82 countries, serviced through six marketing offices in India, the United States and Europe.

36.     GDM is a majority-owned subsidiary of Imation. Since the creation of GDM, Imation has continually held a 51% ownership interest in the company while Moser Baer has held a 49% ownership interest. The purpose of creating the subsidiary was to combine the manufacturing expertise of Moser Baer with the marketing and sales expertise of Imation.

37.     GDM has its headquarters in Dubai, United Arab Emirates. As a majority-owned subsidiary of Imation, GDM's financial results are consolidated into Imation's accounts pursuant to U.S. GAAP rules.

### Philips' Initial Reaction to GDM

38.     In early 2003, Moser Baer began supplying products to GDM and Imation pursuant to the "have made" rights of Imation and GDM under the CLA, and has continued to do so, at all times with the knowledge of Philips. For approximately two years, Philips did not question the right of Imation or GDM to have Moser Baer manufacture products for GDM under the terms of the CLA.

### The Memorex and Imation Relationship

39.     Memorex International, Inc. ("Memorex") is a corporation organized under the laws of the British Virgin Islands. On January 19, 2006, Imation announced its intention to acquire substantially all of Memorex's assets pursuant to an acquisition agreement.

40.     In the spring of 2006, Philips tried to slow the Memorex acquisition as well as tie its disgruntlement with the CLA to Imation's acquisition of Memorex. After hearing of the impending Imation-Memorex transaction, Philips began demanding that Imation pay off past Philips royalties that Philips claimed were owed by Memorex, even though, to the best of Imation's knowledge, any and all Memorex discs were purchased from licensed manufacturers. Imation requested proof of any such debt from Philips.

41.     On April 17, 2006 counsel for Philips sent a facsimile to Imation stating in part, "pursuant to your request . . . I am providing you with additional information about the liability due Philips from Memorex products." The facsimile gave no substantive information to support Philips' claim—merely a conclusory statement. The facsimile

then stated, "Philips expects that this issue regarding Memorex and any issue with respect to Global Data Media-Moser-Bayer [sic] would be resolved prior to the consummation of your contemplated transaction with Memorex."

42.     The Memorex acquisition occurred on April 28, 2006. Imation obtained almost all of Memorex's assets, including the Memorex brand name, the capital stock of the operating subsidiaries of Memorex engaged in the business of the design, development, marketing, distribution and sale of hardware, media, and accessories used for the storage of electronic data under the Memorex brand name. Memorex is now a wholly owned subsidiary of Imation.

43.     On May 2, 2006, a Philips Intellectual Property and Standards program licensing director e-mailed Imation regarding the Memorex acquisition, again asserting that Philips had past royalty claims against Memorex. Imation responded the following day, stating, "Memorex purchases of CD and DVD discs are from manufacturers that are licensed by Philips." Imation further clarified that neither Imation nor Memorex owed Philips any amount for past sales.

44.     Philips responded later that day stating that it did not agree that "sales of Memorex, post-acquisition by Imation, fall under the Philips-3M cross-license. To the extent that your suppliers do not report and pay the royalties, such sales are also not licensed." At the end of this email, Philips made two specific allegations: that Imation owed Philips for "past infringing sales of Memorex ... in addition to the royalties owed from the past for the Moser Baer joint venture, whose sales do not fall under the Philips-3M cross-license."

45. Imation again responded to Philips on May 9, 2006 stating, "Neither Imation nor Memorex is going to be held liable to Philips based on Philips' interpretation of the terms of its license agreement with third-party manufacturers." Imation's email further pointed out that:

(a) Memorex purchased its discs from companies that Philips had listed on its website as licensed manufacturers;

(b) Memorex had not infringed Philips' patents—willfully or otherwise;

(c) there was no legal basis for Philips' argument that Imation had acquired liability by acquiring Memorex, because there were no past infringing sales by Memorex; and

(d) sales by Imation subsidiaries (particularly GDM and its subsidiaries) were royalty-free pursuant to the CLA.

**More Recent Inquiries Regarding the Cross-License Agreement**

46. Despite the ongoing business relationships between Philips and Imation, and after Philips had held out Imation as a licensee in the ITC proceedings, Philips questioned Imation's position as a successor party to the CLA. Philips specifically focused on Imation's continuing use of the CLA, as well as the activities of its subsidiaries, including but not limited to GDM and Memorex.

47. Before 2005, Philips had recognized Imation's rights under the CLA in several ways, including but not limited to listing Imation as a licensee on its website (which continues to date) and making formal filings with the ITC that listed Imation as a licensee of Philips for optical discs—based specifically on the CLA. However, in early 2005, a Philips representative had discussions with Imation's European counsel. Philips again questioned Imation's status as a licensee under the CLA, despite numerous prior

admissions to the contrary. Philips also suggested that Moser Baer was using certain patents obtained by Philips after March 1, 2000.

48. In the summer of 2005, Philips contacted Imation's GDM joint venture partner Moser Baer. Philips indicated that it had "serious questions as to the reported quantities of sales of products allegedly made to Imation and its subsidiaries." Philips suggested that it would first go to Imation "to come to a mutually acceptable solution for the royalty issue with Imation." However, Philips stated that if there were no resolution "within a timeframe acceptable to Philips," then it "shall take appropriate steps," such as attempting to force payment of royalties for products distributed through GDM. Philips also recommended Moser Baer take steps to make an accounting for proper payment of royalties.

49. Moser Baer disagreed with Philips and in August 2005 referred Philips to Imation's rights under the CLA. Philips answered on August 25, 2005 by stating that Philips would not comment on the rights afforded under the CLA, stating "you will appreciate that we are not in a position to comment on the same as the understanding is between your company and Imation and the interpretation of the 'Cross License' in your letter is once again only your company's interpretation." Philips asserted that it would not adopt any statement made by Moser Baer and "expressly" reserved all Philips' "rights" regarding a putative royalty issue.

50. On September 30, 2005, representatives for Philips and Imation met at the Minneapolis-St. Paul International Airport. At this meeting, counsel for Philips claimed that GDM was not a legitimate "subsidiary" under the CLA. Counsel for Philips also openly questioned the assignment of the CLA to Imation from 3M in 1996, calling it a

12

"purported" assignment. Philips counsel further asserted that DVD discs were potentially not covered by the CLA.

51.    During the September 30, 2005, meeting,  a Philips' representative had copies of various confidential agreements between Imation and Moser Baer, all related to the GDM joint venture. Imation is not aware of how Philips obtained these confidential documents. During this meeting, Philips reiterated its position that GDM was not a legitimate subsidiary of Imation. In addition, Philips identified several patent numbers that it asserted Imation was infringing.

52.    Representatives from Imation and Philips met again on December 9, 2005. Philips proposed that Imation participate in a new licensing program to resolve Philips' purported grievance with the CLA and the GDM joint venture. Philips reiterated this request in January 2006, and demanded that Imation relinquish its rights under the CLA. Philips once again identified several patent numbers that it asserted Imation was infringing.

53.    Philips also embarked on an effort to subvert the CLA, the operation of GDM, and Moser Baer's supply of optical data storage media products to Imation and to GDM. Philips has openly denigrated the CLA and repeatedly told Imation's business partners that Philips intended to sue Imation.

54.    On July 28, 2006, Philips sent a letter to Imation's GDM joint venture partner Moser Baer. That letter discussed royalty reporting and "sales made by Moser Baer to Imation and its subsidiaries." It stated in pertinent part that "[a]s was recommended by us and also accepted and also documented in the aforesaid correspondence, we have tried to first discuss the matter with Imation. In spite of our

13

efforts, we have not received the required cooperation from Imation and have not been able to resolve the issue with Imation and come to a mutually acceptable solution with regard to the royalty reporting form submitted by your company so far. By this letter we would like to bring the aforesaid position to your knowledge and would now take appropriate steps in the matter."

55.     Three weeks later, on August 17, 2006, Philips mailed another letter to Moser Baer regarding "clarifications on royalty reports." Philips stated in pertinent part that "we have in the past pointed out that your company has from time to time been claiming exemption for disc supply to Imation, Sony and Verbatim. We have requested you provide us with a letter in original from each of the said companies confirming the quarterly supplies made by your company…unfortunately we have so far not received the requested letter from any of the said parties."

56.     The August 17, 2006 Philips letter lists a number of CD-R, CD-RW, DVD-R, DVD +R, DVD +RW and DVD-RW brands and states, "[w]e would request you to please let us have an urgent confirmation in original on the letterhead of Imation with regard to the sales of aforesaid quantities and the brands that have been purchased by Imation from your company during the aforesaid period. Please note that we have in the past disputed the basis of your seeking exemption and once again reiterate that we do not agree with the same." This letter was sent by Philips' Indian licensing counsel based in Mumbai, India.

57.     Directly and indirectly, Philips has repeatedly threatened Imation with litigation regarding both the CLA and potential patent infringement. Philips has asserted

14

that operation of the GDM joint venture and the Memorex acquisition as well as other potential business arrangements fall outside of the terms of the CLA.

58. Communications between Philips and Imation regarding the CLA have continued through the present. These have included multiple communications by Philips to both Imation and Moser Baer—as well as with other suppliers and customers in this industry. In these contacts, Philips has made various complaints, all centering on the alleged misuse of the CLA. These communications have included representations that:

    (a)    the CLA was not assigned to Imation by 3M in 1996;

    (b)    GDM is not a legitimate subsidiary of Imation;

    (c)    Moser Baer should pay royalties for products supplied to Imation or its subsidiaries, including GDM;

    (d)    Memorex is not a subsidiary for purposes of the CLA; and

    (e)    Imation is infringing certain patents, believed to be United States Patent Nos. 6,538,982 or 6,952,388.

59. On October 18, 2006 Philips sent several letters to Moser Baer entitled "Notice of Default." In part, Philips gave "formal notice that Moser Baer is not in full compliance with its obligations" under separate royalty bearing license agreements that Moser Baer has with Philips, because Moser Baer had not paid royalties for optical disc sales "to Imation and/or its subsidiaries."

60. In its October 18, 2006 letter, Philips identified CD-R, CD-RW, DVD-R, DVD+RW and DVD+R products that Moser Baer supplied to "Imation and/or its subsidiaries." Moser Baer's ability to supply these products to Imation and/or to GDM pursuant to the joint venture arrangements, in each case on a royalty-free basis, is specifically permitted by the "have made" rights of Imation and GDM pursuant to the CLA. Therefore, Philips has no right to request royalties from Moser Baer or claim

15

Moser Baer is in default on royalty payments under any of the separate license agreements that Moser Baer has with Philips.

61.     Instead, Philips demanded that Moser Baer "remedy the above-mentioned failures within 30 calendar days" and claimed "that failure to remedy" would entitle Philips to terminate the separate license agreements between Moser Baer and Philips. Philips' actions against Imation's joint venture partner Moser Baer are a direct attack on the terms and conditions of the CLA and are the subject of separate litigation in India.

### Apprehension and Uncertainty Regarding Recent Imation Acquisitions

62.     Philips has demonstrated an extensive history of threatening Imation, its subsidiaries, it customers and its business partners with litigation. Philips has objected (and continues to object) to Imation's usage of the CLA—uses like creating and acquiring subsidiaries such as GDM and Memorex.   Coupled with its mischaracterizations, Philips has levied a calculated campaign to create uncertainty, insecurity, and controversy regarding the CLA itself and Imation's rights under the CLA.

63.     In addition to GDM and Memorex, Imation has been involved in various other business transactions, including transactions involving the use of Imation's rights under the CLA.  One such business action occurred in February 2007, when Imation entered into a Supply and Master Purchase Agreement with CMC Magnetics Corporation, under which Imation became the exclusive distributor of Hewlett-Packard Company-branded optical media and accessories.

64.     In April 2007, Imation and TDK Corporation jointly announced the sale of TDK's recording media business, including CD and DVD discs, to Imation, subject to customary closing conditions. Shortly thereafter, upon information and belief, Philips

told Imation's suppliers that Philips would block the acquisition. Nevertheless, on July 31, 2007, the Imation-TDK deal was finalized. That same day, Philips sent its Impasse Notice to Imation.

65.     Imation likewise acquired certain businesses and assets relating to consumer electronics products from Memcorp, Inc. in July 2007. Through this acquisition, Imation is now selling consumer electronics products such as DVD players, which are products covered by the CLA.

66.     Each of these business transactions involves Imation's rights under the CLA. Considering the ongoing examples of Philips' intent to misrepresent, distort, and obliterate the CLA, Imation is under the reasonable apprehension that these recent acquisitions, business actions, and future analogous actions, will be subject to litigation by Philips.

### Philips' "Licensing" Programs

67.     The Veeza program is a new "per-batch" licensing program created by Philips. Rather than giving its licensees a standard license to sell products and then report and pay royalties on those sales, the Veeza program requires that a licensee apply for and receive from Philips a license that is specific only to a certain shipment container of products. The licensee must request a Philips Licensed Status Confirmation Document ("LSCD") for each shipment container. Philips is requiring CD-R disc manufacturers sign on to the program. Philips also plans on using the scheme to control other products, such as DVD-R discs.

68.     Philips has used LSCDs as a mechanism to block the importation of "unlicensed" CD-R discs into various countries, including specifically Argentina, Brazil

17

and Mexico.   Philips has refused to notify customs agents in those countries that Imation's products are in fact licensed.

69.     Philips is trying to use the Veeza program to eliminate Imation's pre-existing license rights under the CLA.  Article 2, Section 2 of the CLA clearly states that Imation and its subsidiaries have a "non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under PHILIPS LICENSED PATENTS to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of LICENSED PRODUCTS."

70.     Philips is utilizing the Veeza and LSCD program to further burden Imation's business relationships and impede the legitimate use of the CLA.  For example, in an August 17, 2006 letter to Moser Baer, Philips demanded that Moser Baer request that Imation provide verification of quantities and brands of discs sold to Imation as part of its royalty payment enforcement efforts.  The letter went on to claim that Philips has continually disputed Moser Baer's past claims to Imation's exemption for royalties— again, a direct and open action clearly in contravention to the terms and conditions of the CLA.  This letter was forwarded to Imation on September 18, 2006.

71.     By mid-September 2006, Philips terminated its licenses to several major CD-R disc manufacturers and "delisted" others from its list of "approved" licensees.  Several of these manufacturers supply discs for Imation and Imation's subsidiary GDM.

72.     Philips subsequently restored many of the suppliers to its list of approved licensees while Imation and Philips were in negotiations.   This was done through provisional license agreements with several major CD-R disc manufacturers.

73.     However, on July 31, 2007—the same date that it served Imation with an Impasse Notice—Philips again removed several key industry manufacturers from its licensing website.   These manufacturers include Imation suppliers.

74.     Philips also continues to impose its Veeza program on various suppliers and manufacturers of CD-R discs made for Imation and its subsidiaries—again, in direct contravention to the royalty-free provisions of the CLA.

75.     More recently, Philips has pursued a new "lump sum" licensing scheme that would require that CD and DVD disc suppliers pay Philips a fixed annual royalty payment regardless of the actual total number of discs they sell and regardless of the number of discs they sell to licensed entities like Imation.

76.     In pursuit of that scheme, Philips removed many licensed suppliers from its website on July 31, 2007.   Upon information and belief, Philips informed those licensees that they had until August 20, 2007 to accept Philips' new "lump sum" proposal.  Philips is essentially seeking to recover double compensation the same patents by refusing to license suppliers' sales unless the suppliers agree to pay a royalty on sales that are already licensed.  As with Philips' refusal to grant LSCDs to Imation, Philips has created another mechanism in an attempt to deprive Imation of its rights under the CLA.

77.     Similarly, on August 1, 2007, Philips again denied Imation's LSCD request for materials delivered to Argentina, citing its recent delivery of the Impasse Notice, even though such denial is in direct contravention to the royalty-free provisions of the CLA.

78.     Meanwhile, Philips continues to openly contest the legitimacy, scope and applicability of the CLA to Imation's business partners, impeding Imation's ability to properly conduct business worldwide.

### Philips' Patent Infringement Allegations

79.     During various discussions and negotiations, Philips has repeatedly alleged that Imation infringed multiple Philips patents.

80.     Philips' threats of infringement and recent Philips representations and market actions with respect to the validity of the CLA have created a reasonable apprehension of Philips suing Imation for infringement.

81.     Patent information provided by Philips in the past corresponds to internal Philips reference numbers that match the U.S. Patent Office Attorney Docket Numbers for the following patents:

(a)     U.S. Patent No. 6,538,982 B1 (filed January 24, 2000); and

(b)     U.S. Patent No. 6,952,388 B2 (filed December 11, 2001).

82.     United States Patent No. 6,538,982 B1 ("the '982 Patent") is entitled "Record Carrier and Apparatus for Scanning the Record Carrier" was filed January 24, 2000 and foreign application priority data dates back to January and February 1999. The assignee of record is listed as Koninklijke Philips Electronics, N.V.

83.     The '982 patent claims priority to two EP documents numbered 99200201 and 99200461 filed in 1999.

84.     Under the CLA, Imation is licensed to use any patent for technology described in the CLA having a filing date, or claiming priority from a date, on or before March 1, 2000 (Article 1, Section 12). Because the '982 patent falls within the licensed period, Imation is licensed under the patent.

85.     United States Patent Number 6,538,388 B2 ("the '388 patent") is entitled "Optical Records Carrier Containing Special Codes" and shows an issue date of October 4, 2005. The assignee of record is listed as Koninklijke Philips Electronics, N.V.

86.     Based upon the repeated representations by Philips, as well as clear and open market hostility, these threats have created a reasonable apprehension of Philips suing Imation for infringement of the '982 and '388 patents.

<h3 align="center">Realm of Licenses Granted Under the CLA</h3>

87.     The CLA purposefully covers a wide expanse of technology. Article 1, Sections 10 through 12 of the CLA broadly define "licensed patents," "licensed process" and "licensed products," including essentially most optical and magneto-optical information storage and retrieval technology held by either party.

88.     The CLA grants Imation and its subsidiaries access to an extensive domain of royalty-free and nonexclusive patent licenses over Philips' optical and magneto-optical technology. This includes "any and all patents, utility models, inventor certificates, and design patents and registrations of all countries of the world (including any applications, continuations, continuations-in-part, divisionals, reissues, reexamined patents, or extensions thereof)" that were:

    (a)     owned or controlled by Philips;

    (b)     related to optical or magneto-optical technology; and

    (c)     have a filing date of March 1, 2000, claim priority from March 1, 2000, or are or were entitled to claim priority from March 1, 2000.

89.     As a result, under the CLA Imation and its subsidiaries maintain license rights to a vast array of patented Philips optical and magneto-optical technologies that

were filed on or before, were entitled to be filed on or before, or are entitled to claim priority before March 1, 2000.

90.     Articles 3 and 4 of the CLA provide that any patent license granted under the terms of the CLA shall continue for the life of that patent, or for such shorter period imposed by the government of a particular country.   Therefore, Imation and its subsidiaries maintain license rights to a vast array of patented Philips optical and magneto-optical technologies that were filed on or before, were entitled to file on or before, or are entitled to claim priority before March 1, 2000 (hereinafter "the pre-2000 Philips portfolio").   Each patent within the pre-2000 Philips portfolio is licensed to Imation and its subsidiaries for the life of that patent.

### The Need for Declaratory Relief

91.     Philips has openly engaged in a calculated campaign to deny Imation the benefits granted under the CLA by: misrepresenting the scope of licenses held by Imation and Imation's legitimate ability to use those licenses even today; threatening customers and suppliers (such as Moser Baer) of Imation and Imation subsidiaries (such as GDM) with improper demands for payment of royalties; threatening Imation with patent infringement and other litigation; mandating participation in an "additional licensing" schemes; denigrating the extent and applicability of the CLA itself, as well as various other market activities.

92.     Philips has also represented to various market players, including Imation's business partners and associates, that it will make further attempts to curtail or interfere with the legitimate business operation of Imation's joint venture with Moser Baer, GDM, Moser Baer's supply to GDM and Imation under the CLA, Imation's subsidiary Memorex, and/or other future Imation subsidiaries.   Philips is already attempting to

22

extract royalties from Moser Baer for its supply to Imation and GDM even though Imation and GDM possess royalty-free "have made" rights under the CLA.

93.     Philips' objective is to create an atmosphere of fear to such an extent that Imation and GDM customers will no longer purchase from them due to possible litigation over royalties allegedly owed to Philips and patents that are not infringed by Imation.

94.     In addition, Imation received an Impasse Notice from Philips on July 31, 2007, indicating that an impasse had arisen in the good-faith negotiations between Philips and Imation.  Pursuant to the parties' Standstill Agreement, an Impasse Notice permits either side to recommence the litigation within a short period of time after receipt of the notice.

95.     Judgment relative to the Counts delineated below will serve a useful purpose in clarifying and settling the legal relations at issue.   Judgment will also terminate and afford relief to Imation from the uncertainty, insecurity, and controversy giving rise to this Declaratory Judgment Complaint, especially in light of Imation's recent business transactions with CMC Magnetics Corporation, TDK Corporation and Memcorp., Inc.

96.     Based on Philips' actions, Imation reasonably anticipates that Philips will further encumber Imation's legitimate and rightful use of the CLA.  Should this occur, Imation will suffer significant economic damage, and will be faced with the ongoing threat of improper legal or market action by Philips.

97.     Furthermore, Imation's receipt of the Impasse Notice from Philips causes Imation to reasonably anticipate that an actual controversy exists between Imation and Philips over the issues as set forth in this Complaint.  As a result of that anticipation, and

in accordance with the Standstill Agreement, Imation delivered an Impasse Notice to Philips on August 3, 2007.

98.    The validity and extent of the CLA is at the core of all of these issues. An immediate determination regarding Imation's rights under both the CLA and questioned patents is therefore clearly necessary.

## COUNT ONE

### Declaratory Judgment that Imation, as the Corporate Successor to 3M, is a Beneficiary Under the 1995 Patent Cross-License Agreement

99.    Imation incorporates herein its allegations set forth in paragraphs 1 through 98.

100.    Pursuant to 28 U.S.C. § 2201 there exists an actual controversy between Imation and Philips as to whether Imation, as the corporate successor to 3M, is a beneficiary under the CLA.

101.    As the corporate successor to 3M with respect to 3M's data storage business, Imation is clearly the beneficiary of the CLA. While the original agreement was formed between 3M and Philips, Article 9, Section 6 of the CLA expressly states that "such rights and licenses may be assigned, licensed, or transferred to an entity acquiring substantially all of the business of a party to which this CLA pertains provided that such party promptly shall send written notice to that effect to the other party."

102.    The rights under the CLA were transferred to Imation when it was spun off from 3M in 1996. Imation notified Philips in writing of the transfer.

103.    Since 1996 Philips has implicitly and explicitly acknowledged 3M's assignment of the CLA to Imation by listing Imation, not 3M, as a licensee on the Philips website. In addition, Philips represented to the U.S. International Trade Commission

during proceedings begun in June 2000 that Imation was in fact a domestic licensee. The USITC accepted and adopted Philips' representation. Under both the terms of the CLA and through representations made by Philips, it is clear Imation is the beneficiary of the CLA.

104. Imation understood itself to be and relied in good faith on Philips' representations that it is the beneficiary of 3M's cross-license. Even if this were not the case, as recently claimed by Philips, Imation's detrimental reliance establishes Imation's beneficiary rights, because Imation has fundamentally changed its position in reliance on Philips' representations.

105. Imation therefore requests that the Court declare that Imation, as the corporate successor to 3M, is a beneficiary under the CLA.

## COUNT TWO

### Declaratory Judgment that the 1995 Patent Cross-License Agreement Gives Imation and its Subsidiaries License to All Philips' Pre-2000 Optical Patent Portfolio

106. Imation incorporates herein its allegations set forth in paragraphs 1 through 105.

107. Pursuant to 28 U.S.C. § 2201, there exists an actual controversy between Imation and Philips as to whether Imation holds a personal, non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under Philips' licensed patents to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of Philips' licensed products.

108. Under Article 4 of the CLA, the term of any patent license granted under the CLA "shall continue thereafter for the term provided in Article 3." These license grants continue even though the agreement itself expired on March 1, 2000.

109. Under Article 3 of the CLA, the term of the license granted under the CLA commenced on the effective date of the CLA and "shall continue as to each LICENSED PATENT for its life, or for such shorter period as may be imposed in any country by the government of that country."

110. The CLA further defines LICENSED PATENTS as those that "have a filing date, claim priority from a date, or are or were entitled to claim priority from a date, on or before the expiration date of this Agreement as set forth in Article 4." That expiration date is March 1, 2000.

111. Imation therefore requests that the Court declare that Imation and its subsidiaries hold a personal, non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of applicable products under any and all appropriate a) patents, utility models, inventor certificates, and design patents and registrations of all countries of the world (including any applications, continuations, continuations-in-part, divisionals, reissues, reexamined patents, or extensions thereof); b) which are or were owned or controlled by Philips; c) relate to optical or magneto-optical information storage and retrieval technology; and d) have a filing date, claim priority from a date, or are or were entitled to claim priority from a date, on or before March 1, 2000. (The "Philips' pre-2000 Patent Portfolio").

## COUNT THREE

### Declaratory Judgment that GDM, Imation's Joint Venture with Moser Baer Meets the Definition of "Subsidiary" under the Patent Cross-License Agreement

112.     Imation incorporates herein its allegations set forth in paragraphs 1 through 111.

113.     Pursuant to 28 U.S.C. § 2201 there exists an actual controversy between Imation and Philips as to whether GDM, Imation's joint venture with Moser Baer, meets the definition of "subsidiary" under the CLA.

114.     The term "subsidiary" is clearly defined in Article 1, Section 2 of the CLA as "any corporation, firm, partnership, proprietorship, or other form of business organization as to which the party now or hereafter has more than a 50% ownership . . ." GDM meets this definition.

115.     Any benefit under the CLA extends directly to any "subsidiary," under Article 2, Section 2, which includes GDM.

116.     Moser Baer's ability to supply products to Imation and/or GDM under the existing joint venture arrangement—in each case on a royalty-free basis—is specifically permitted by the "have made" rights granted in the CLA. Accordingly, Philips has no right to request royalties from Moser Baer with respect to such products Moser Baer supplies to Imation and/or GDM.

117.     Imation therefore respectfully requests that the Court declare that GDM, Imation's joint venture with Moser Baer, meets the definition of "subsidiary" under the CLA, that Moser Baer's ability to supply products to Imation and/or GDM under the existing joint venture arrangement—in each case on a royalty-free basis—is specifically permitted by the "have made" rights granted in the CLA, and that accordingly, Philips

has no right to request royalties from Moser Baer with respect to such products Moser Baer supplies to Imation and/or GDM.

## COUNT FOUR

### Declaratory Judgment that Imation's Wholly Owned Memorex Division Meets the Definition of "Subsidiary" under the Patent Cross-License Agreement.

118.    Imation incorporates herein its allegations set forth in paragraphs 1 through 117.

119.    Pursuant to 28 U.S.C. § 2201 there exists an actual controversy between Imation and Philips as to whether Imation's recent acquisition Memorex, meets the definition of "subsidiary" under the CLA.

120.    The term "subsidiary" is clearly defined in Article 1, Section 2 of the CLA as "any corporation, firm, partnership, proprietorship, or other form of business organization as to which the party now or hereafter has more than a 50% ownership . . ."

121.    Imation acquired Memorex on April 28, 2006.  Through that acquisition, Imation obtained almost all of Memorex's assets, including the Memorex brand name, the capital stock of the operating subsidiaries of Memorex engaged in the business of the design, development, marketing, distribution and sale of hardware, media, and accessories used for the storage of electronic data under the Memorex brand name.

122.    Memorex is now a wholly owned subsidiary of Imation and one of Imation's divisions.

123.    Imation therefore respectfully requests that the Court declare Memorex meets the definition of "subsidiary" under the CLA.

## COUNT FIVE

### Declaratory Judgment that DVD Technology is Covered Under the Patent Cross-License Agreement

124.    Imation incorporates herein its allegations set forth in paragraphs 1 through 123.

125.    Pursuant to 28 U.S.C. § 2201 there exists an actual controversy between Imation and Philips as to whether DVD technology is covered under the CLA.

126.    Article 1, Sections 1 through 5 of the CLA defines "optical storage medium," "single layer," "multiple layers," "recordable/erasable optical medium," "write-once optical medium," "read-only optical medium," "previously licensed product(s)," "optical drive," "optical drive component," "optical drive accessory," and "optical storage medium accessory."   All of these definitions are general, broad definitions that clearly encompass DVD technology.

127.    There is significant crossover between Philips' CD patents and Philips' DVD patents.   The CLA covers optical storage media that contain either single or multiple layers.   The plain language of the CLA states that the royalty-free license applies to most CD and DVD products.   Moreover, Philips has acknowledged that the CLA covers Imation's CD-R and CD-RW technology in correspondence with Imation and on Philips' licensing website. Through correspondence, Philips has similarly acknowledged that the CLA covers DVD recordable/rewriteable technology.

128.    Imation therefore requests that the Court declare that DVD technology is covered under the CLA.

## COUNT SIX

### Declaratory Judgment of Non-Infringement of the '982 patent

129.    Imation incorporates herein its allegations set forth in paragraphs 1 through 128.

130.    Upon information and belief, Philips is the record owner of U.S. Patent No. 6,538, 982 B1.

131.    Philips has alleged that Imation makes and sells certain products that infringe the '982 patent.

132.    Pursuant to 28 U.S.C. § 2201 there exists an actual controversy between Imation and Philips as to whether Imation has infringed and is infringing, either directly or indirectly, contributorily, by inducement or otherwise, any claim of the '982 patent.

133.    Imation is licensed to make, have made, make for others, use, lease, distribute, offer to sell, sell, import or otherwise dispose of licensed embodiments of the '982 patent pursuant to the CLA.

134.    Because Imation is licensed to practice the '982 patent, Imation has not infringed and is not infringing, either directly or indirectly, contributorily, by inducement or otherwise, any claim of the '982 patent.

135.    Imation therefore requests that the Court declare Imation's non-infringement of the '982 patent.

## COUNT SEVEN

### Declaratory Judgment of Non-Infringement, Invalidity
### and Unenforceability of the '982 Patent

136.    Imation incorporates herein its allegations set forth in paragraphs 1 through 135.

137.    Imation pleads Count Six in the alternative, only if the Court determines that Imation does not have a valid license to practice the subject matter of the '982 patent.

138.    Upon information and belief, Philips is the record owner of U.S. Patent No. 6,538,982 B1.

139.    Philips has alleged that Imation makes and sells certain products that infringe the '982 patent.

140.    An actual case and controversy exists between Philips and Imation concerning whether Imation infringes any valid and enforceable claims of the '982 patent.

141.    The '982 patent is invalid and/or unenforceable because of failure to meet the conditions of patentability and/or otherwise comply with the requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

142.    Imation has not infringed any valid and enforceable claim of the '982 patent either directly, indirectly or under the doctrine of equivalents.

143.    A judicial declaration of invalidity, unenforceability and noninfringement is necessary and appropriate to resolve this controversy.

## COUNT EIGHT

### Declaratory Judgment of Non-Infringement, Invalidity and Unenforceability of the '388 Patent:

144.    Imation incorporates herein its allegations set forth in paragraphs 1 through 143.

145.    Upon information and belief, Philips is the record owner of U.S. Patent No. 6,952,388 B2.

146.    Philips has alleged that Imation makes and sells certain products that infringe the '388 patent.

147.    An actual case and controversy exists between Philips and Imation concerning whether Imation infringes any valid and enforceable claims of the '388 patent.

148.    The '388 patent is invalid and/or unenforceable because of failure to meet the conditions of patentability and/or otherwise comply with the requirements of the patent laws, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

149.    Imation has not infringed any valid and enforceable claim of the '388 patent either directly, indirectly or under the doctrine of equivalents.

150.    A judicial declaration of invalidity, unenforceability and noninfringement is necessary and appropriate to resolve this controversy.

### JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38.1, Imation demands a trial by jury on all issues so triable.

**WHEREFORE,** Imation respectfully requests the following relief:

1.     A declaration that Imation is a successor and beneficiary under the 1995 Patent Cross-License Agreement for Optical and Magneto-Optical Information Storage and Retrieval Technology between 3M and Philips ("CLA");

2.     A declaration that Imation has a non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under appropriate Philips licensed patents to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of optical and magneto optical information storage and retrieval products as defined by the terms of the CLA;

3.     A declaration that Imation's license under the terms of the CLA applies to all products covered by the relevant Philips' pre-March 2000 Optical and Magneto-Optical Patent Portfolio, including any and all appropriate patents, utility models, inventor certificates, and design patents and registrations of all countries of the world for which Philips is not required to pay royalties or other consideration to third parties (including any applications, continuations, continuations-in-part, divisionals, reissues, reexamined patents, or extensions thereof) and that: are or were owned or controlled by Philips; relate to optical or magneto-optical storage and retrieval technology; and have a filing date before March 1, 2000, claim a priority from March 1, 2000, are or were entitled to claim priority from March 1, 2000;

4.     A declaration that GDM, Imation's joint venture with Moser Baer, meets the definition of "subsidiary" under the CLA, that Moser Baer's ability to supply products to Imation and/or GDM under the existing joint venture arrangement, in each case on a royalty-free basis, is specifically permitted by the "have made" rights granted in

the CLA, and that accordingly, Philips has no right to request royalties from Moser Baer with respect to such products Moser Baer supplies to Imation and/or GDM;

5.      A declaration that Memorex, acquired by Imation in April 2006, is a "subsidiary" under the CLA, and that accordingly, Philips has no right to request royalties from Imation with respect to Memorex products sold on and after Imation's acquisition in April 2006;

6.      A declaration that DVD technology is covered under the CLA;

7.      A declaration that Imation and its subsidiaries are licensed to make, have made, make for others, use, lease, distribute, offer to sell, sell, import or otherwise dispose of licensed embodiments of the '982 patent pursuant to the CLA;

8.      A declaration that Imation and its subsidiary GDM have not infringed and are not infringing, either directly or indirectly, contributorily, by inducement or otherwise, any valid and enforceable claim of the '982 patent;

9.      A declaration that the '982 patent is invalid for failing to meet one or more of the individual requirements for patentability set forth in 35 U.S.C. § 101 et seq.;

10.     A declaration that Imation and its subsidiary GDM have not infringed and are not infringing, either directly or indirectly, contributorily, by inducement or otherwise, any valid and enforceable claim of the '388 patent;

11.     A declaration that the '388 patent is invalid for failing to meet one or more of the individual requirements for patentability set forth in 35 U.S.C. § 101 et seq.;

12.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them must treat Imation and its subsidiaries as it treats all of its licensees;

13.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them are permanently enjoined from suing or threatening to sue, or making any charge against Imation that its subsidiaries are not licensed under the CLA;

14.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them are permanently enjoined from suing or threatening to sue, or making any charge against Imation, GDM and/or Moser Baer that that Moser Baer's supply of products to Imation and/or GDM under the existing joint venture arrangement, in each case on a royalty-free basis, is not permitted under the CLA;

15.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them must treat Imation and its subsidiary Memorex as it treats all other licensees;

16.     A declaration Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them are permanently enjoined from suing or threatening to sue, or making any charge against Imation that Memorex is not licensed as an Imation subsidiary under the CLA;

17.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them are permanently enjoined from suing or threatening to sue, or making any charge against Imation that its products infringe the '982 patent;

18.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them are permanently enjoined

from suing or threatening to sue, or making any charge against Imation that its products infringe the '388 patent;

19.     A declaration that Philips and its officers, agents, employees, attorneys, and all persons in active concert or participation with them have waived, have acquiesced, and/or are estopped from claiming that: Imation is not a successor of the CLA; GDM is not a "subsidiary" under the CLA; and Moser Baer is not permitted under the CLA to supply of products to Imation and/or GDM under the existing joint venture arrangement, in each case on a royalty-free basis..

20.     Such different or further relief that the court deems just and equitable.

Dated: August 10, 2007.                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By:_____
    Ronald J. Schutz (#130849)
    B. Todd Jones (#0150711X )
    Allen A. Slaughter (#0301668)

    2800 LaSalle Plaza
    800 LaSalle Avenue
    Minneapolis, Minnesota 55402
    Tel.: 612-349-8500
    Fax: 612-339-4181

    ATTORNEYS FOR PLAINTIFF
    IMATION CORPORATION