## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Imation Corporation, a<br>Delaware corporation, | Civil No. 07-3668 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| Koninklijke Philips Electronics N.V., a foreign<br>corporation; U.S. Philips Corporation, a<br>New York corporation; and Philips Electronics<br>North America Corporation, a Delaware corporation, | |
| Defendants. | |
| Koninklijke Philips Electronics N.V., a foreign<br>corporation; U.S. Philips Corporation, a<br>New York corporation; and Philips Electronics<br>North America Corporation, a Delaware corporation, | |
| Counterclaim and Third-Party-Claim<br>Plaintiffs, | |
| v. | |
| Imation Corp., | |
| Counterclaim Defendant, | |
| and | |
| Moser Baer India Limited, Global Data<br>Media FZ-LLC, MBI International<br>FZ-LLC, MBI International Services<br>Private Limited, MBI India Marketing<br>Private Limited, Glyphics Media Inc.,<br>and Memorex International Products, Inc., | |
| Third-Party Defendants. | |

_____

B. Todd Jones, Esq., Richard M. Martinez, Esq., Jennifer L. McKenna, Esq., Ronald J. Schutz, Esq., Allen A. Slaughter, Jr., Esq., and Amy N. Softich, Esq., Robins Kaplan Miller & Ciresi LLP, counsel for Imation Corp., Glyphics Media Inc., Global Data Media FZ-LLC, MBI India Marketing Private Limited, MBI International FZ-LLC, MBI International Services Private Ltd., and Memorex International, Inc.

Garrard Beeney, Esq., Adam R. Brebner, Esq., Marc De Leeuw, Esq., and Jessica Klein, Esq., Sullivan & Cromwell; and Laura L. Myers, Esq., Kurt J. Niederlueke, Esq., and Darren B. Schwiebert, Esq., Fredrikson & Byron, PA, counsel for Koninklijke Philips Electronics N.V., U.S. Philips Corporation, and Philips Electronics North America Corporation.

Sonya R. Braunschweig, Esq., Alan L. Kildow, Esq., DLA Piper US LLP; and Jeffrey G. Randall, Esq., Albert L. Hogan, III, Esq., Skadden, Arps, Slate, Meagher & Flom, counsel for Moser Baer India Limited.

_____

## INTRODUCTION

This matter is before the Court pursuant to a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction brought by Plaintiff Imation Corporation ("Imation"). Imation seeks an injunction forbidding Defendants Koninklijke Philips Electronics N.V., U.S. Philips Corporation, and Philips Electronics North America Corporation (collectively, "Philips") from suggesting, either directly or indirectly, that Imation is not licensed under a 1995 Cross-License Agreement (the "CLA") until the end of this lawsuit. For the reasons stated below, Imation's motion is denied.

## BACKGROUND

Imation develops, manufactures, and sells optical and magnetic media storage products. Philips holds numerous patents necessary to manufacture recordable and

rewritable optical discs. Philips both sells its own branded discs and licenses its patents to others.

Imation and Philips are parties to the CLA.[1] The CLA provides for the cross-grant of royalty-free, non-exclusive patent licenses. With respect to Imation's rights under the CLA, Philips agreed to the following:

> PHILIPS agrees to grant and does hereby grant to [Imation] and its SUBSIDIARIES a personal, non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under PHILIPS LICENSED PATENTS to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of LICENSED PRODUCTS. Further, PHILIPS agrees to grant and does hereby grant [Imation] and its SUBSIDIARIES a personal non-exclusive, indivisible, non-transferable, irrevocable, world-wide royalty-free license under PHILIPS LICENSED PATENTS to practice any LICENSED PROCESS in the course of making, having made, making for others, using, leasing, distributing, offering to sell, importing, or otherwise disposing of LICENSED PRODUCTS.

(Slaughter Decl. ¶ 2, Ex. A, Art. 2, Sect. 2.) The CLA defines "SUBSIDIARY" as "any corporation, firm, partnership, proprietorship or other form of business organization as to which the party now or hereafter has more than a fifty percent (50%) ownership interest." (*Id.* at Art. 1, Sect. 13.) Essentially, the CLA entitles Imation and its subsidiaries to manufacture and sell optical discs, or to have others manufacture the discs, on a royalty-free basis.

The CLA contains an expiration clause that provides that the CLA "shall expire on March 1, 2000, except that any patent license which has been granted under ARTICLE 2

---

[1] The CLA was originally entered into between Philips and Minnesota Mining and Manufacturing Company ("3M"). (Decl. of Allen A. Slaughter, Jr., in Supp. of Imation Corp.'s Mot. for a TRO and Prelim. Inj. ("Slaughter Decl.") ¶ 2, Ex. A at 2.) The parties do not dispute that 3M subsequently created Imation as a "spin off" company and that Imation succeeded to 3M's rights and obligations under the CLA.

shall continue thereafter for the term provided in ARTICLE 3." (*Id*. at Art. 4.)  Article 3 of the CLA, in turn, provides that the "term of the licenses . . . shall continue as to each LICENSED PATENT for its life, or for such shorter period as may be imposed in any country by the government of that country." (*Id*. at Art. 3.)

Imation filed this declaratory judgment action in August 2007, seeking an interpretation of its rights under the CLA.[2]  In its Complaint for Declaratory Judgment, Imation seeks a declaration that it, as the corporate successor to 3M, is a beneficiary under the CLA; that Imation's subsidiaries are properly operating under the CLA[3]; that certain patented DVD technology is covered by the CLA; that Imation does not infringe any valid claim of certain patents; and that certain patents are invalid.

Presently before the Court is Imation's motion for a TRO.  Imation asserts that a TRO is necessary because Philips is engaging in direct and indirect extrajudicial market acts that are circumventing Imation's rights under the CLA.  Imation points to several examples of Philips' alleged extrajudicial acts.  First, Imation claims that Philips is attempting to unilaterally terminate the CLA.  In support of this claim, Imation points to a "Notice Letter" sent by Philips' counsel to 3M on October 17, 2007.  In that letter, Philips' counsel explains Philips' view that Imation and Moser Baer India Limited

---

[2]  Imation previously filed a Complaint for declaratory relief in the fall of 2006. Imation withdrew the initial complaint after the parties entered into a "Standstill Agreement" during efforts to reach a settlement.  After settlement discussions failed, Imation re-filed its lawsuit.

[3]  In particular, Imation seeks a declaration that Global Data Media FZ-LLC ("GDM") and Memorex International, Inc. ("Memorex"), as subsidiaries, may validly exercise royalty-free have-made rights under the CLA.

("Moser Baer") are attempting to use GDM to violate the terms of the CLA and states that "whatever rights Imation had under the CLA terminated at least as early as of the formation of GDM, on February 25, 2003." (Slaughter Decl. ¶ 3, Ex. C.)  Imation argues that Philips is now using that letter as part of an effort to undermine Imation's position in the optical media products market.

Second, Imation claims that Philips improperly effected the seizure of Imation's optical storage media in Germany.  By letter dated April 15, 2008, counsel for Philips informed Imation that a container containing a shipment of optical storage media sent by CMC Magnetics Corp. ("CMC") to SK Kassetten GmbH ("SKK") was detained by German Customs in early April.  (Slaughter Decl. ¶ 5, Ex. D.)[4]  Counsel for Philips also stated that Imation Europe B.V. was indicated as the sender of the goods and "[s]ince . . . your company is not a licensee of our client, we have to assume that the above mentioned goods are patent infringing."  (*Id.*)

Imation also asserts that Philips is engaging in other market actions that have affected Imation, such as threatening litigation against Imation's customers and publicly stating that Imation's rights under the CLA have terminated.  At the TRO hearing, Imation submitted a letter from Philips to Tonic Electronics Ltd. ("Tonic"), an Imation supplier.  (Pl.'s Ex. 1.)  In the letter, Philips notified Tonic that it is not in full compliance with its obligations under certain license agreements entered into with Philips.  In particular, Philips asserted that Tonic is failing to pay royalties due to Philips for products

---

[4]   The shipment contained optical disc products that Imation purchased from CMC for delivery to a customer in Germany.  (Decl. of Joseph V. Gote in Supp. of Imation's Mot. for a TRO and Prelim. Inj. ¶ 3.)

5

sold to Imation and Memcorp Inc. (US). Imation argues that no such royalties are due because the sales are covered by the CLA.

Philips opposes Imation's motion for a TRO, arguing that there is no emergency justifying the extraordinary remedy. Specifically, Philips asserts that the GDM Entities (GDM, its "MBI" subsidiaries and Glyphics Media, Inc.) are not "subsidiaries" or a true "joint venture." Instead, Philips contends that Imation and Third-Party Defendant Moser Baer created a sham arrangement to avoid paying royalties due to Philips by taking improper advantage of the CLA. Philips argues that Imation materially breached the CLA by creating these sham subsidiaries and therefore its rights under the CLA have been terminated.[5]

## DISCUSSION

**I.     Standard of Review**

A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *See West Pub'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the

---

[5]     In addition, Philips argues that the GDM entities were created after the expiration of the CLA and, for that reason alone, are not valid subsidiaries under the CLA.

injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

The Court first turns to the issue of irreparable harm. Imation must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). A showing of speculative harm is insufficient to meet this burden. *Id.* Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief. *Gelco Corp.*, 811 F.2d at 420.

Imation asserts that it is facing irreparable harm to its goodwill and market share as a result of Philips' extrajudicial acts. Imation argues that Philips is harming Imation's existing business relationships and goodwill because Imation's existing customers face the risk and uncertainty of having shipments delayed, seized, or destroyed. Imation also claims that its ability to attract future customers will be limited absent immediate injunctive relief forbidding Philips from renouncing Imation's licensed status until the conclusion of this litigation.

Philips responds that there is no evidence of irreparable harm to Imation. Specifically, Philips contends that there is no threat that Imation's discs will be destroyed in Germany and that Imation may obtain the release of the discs by posting security. In addition, Philips argues that there is no evidence of how the October 2007 Notice Letter has irreparably harmed Imation and that the threat of future border detentions is speculative and would be compensable by money damages.

Imation's primary evidence of irreparable harm relates to the seizure of discs in Germany. Imation argues that Philips' actions are creating uncertainty as to how Imation shipments will reach its customers in Germany. In particular, Imation contends that Philips has the ability to effect the seizure and destruction of Imation products and that this ability will harm Imation's relationships with its customers. With respect to the seizure in Germany, however, the evidence demonstrates that the discs were not seized because Imation was the seller, but instead because Philips had notified German customs officials to watch out for discs being imported by or shipped to another corporation, SKK.[6] (Decl. of Walter Schüschke ("Schüschke Decl.") ¶ 7.) There is no evidence that Philips has made any similar requests aimed at or targeting Imation or its subsidiaries. Thus, there is little evidence to support Imation's argument that Philips is effecting the seizure of Imation shipments or that Imation's future shipments of discs in Germany are at risk of being detained.[7] There also appears to be no risk that the discs currently being held in Germany will be destroyed absent Imation's consent. While Imation will be required to post security to release the discs being detained, this single incident does not rise to the level of irreparable harm, as it appears to be isolated and any harm incurred would be compensable with money damages.

---

[6] A German court previously found that SKK infringed Philips' patents and enjoined SKK from distributing unlicensed CD-Rs in Germany. (Schüschke Decl. ¶ 7.) Prior to this specific request, Philips had requested generally that customs officials detain goods from unlicensed manufacturers that infringe their intellectual property rights.

[7] In addition, the evidence before the Court indicates that the detentions in Germany are initiated and conducted by customs officials. (Schüschke Decl. ¶ 6.)

To the extent that Imation relies on the possibility of future seizures abroad to support a finding of irreparable harm, the Court determines, on the record before it, that any such harm remains speculative.  As discussed above, the seizure of discs in Germany does not appear to be the result of an effort to target shipments from Imation.  In addition, there is no evidence that additional foreign seizures of discs are likely, let alone imminent.

Imation also claims that Philips must be precluded from representing to the public that Imation is not licensed under the CLA.  As an example of the harm caused by such representations, Imation first points to the October 17, 2007 letter.  In that letter, counsel for Philips states that "Philips repeatedly stated its view that the CLA has been breached with the consequence that whatever rights Imation had under the CLA terminated at least as early as February 25, 2003."  (Slaughter Decl. ¶ 3, Ex. C.)  The Court concludes that this letter does not demonstrate that Imation will suffer irreparable harm absent the injunctive relief requested.   First, while Imation's rights under the CLA are the subject of Imation's declaratory judgment action, the statements made in the Notice Letter appear to be consistent with Philips' position generally that Imation has breached the CLA and therefore no longer enjoys the rights it was granted under the CLA.  In addition, the letter was sent over six months ago.  The delay in bringing this motion weighs against a finding of irreparable harm.

Imation also relies on the May 5, 2008 letter to Tonic to demonstrate irreparable harm.  Because the letter was introduced at the TRO hearing, the parties were unable to provide thorough arguments in their briefs on the significance of the letter.  The parties

9

did, however, offer oral arguments at the hearing. Based on those arguments, and the Court's review of the record, the Court views this letter, like the detention of discs in Germany, as an isolated incident. Despite this letter, the record as a whole does not support the contention that Philips is engaged in an international effort to circumvent Imation's rights under the CLA.

On the record before it, and for the reasons stated above, the Court concludes that Imation has not made a sufficient showing of irreparable harm. Accordingly, the Court's inquiry ends, and Imation's request for injunctive relief is denied. *See, e.g.*, *Gelco*, 811 F.2d at 420. The Court emphasizes, however, that while it finds Imation's evidence of irreparable harm insufficient at this time to justify the issuance of a TRO, the parties should not assume that the Court would make the same finding in the event that future seizures or instances of market interference occur.

In light of the current litigation, the Court is surprised that the parties have not been able to reach some arrangement on how to handle situations such as the seizure of discs in Germany. It is difficult for the Court to understand why the parties could not conduct an inventory of Imation subsidiaries. With such an inventory in hand, the parties could predict where disputes might arise and Philips could contact Imation directly, as opposed to contacting 3M by letter. Philips represents that it has offered Imation an escrow arrangement for products sold to customers in Europe, arguing that such an agreement would allow Imation to avoid future border detentions. The Court urges the parties to attempt to reach some arrangement, with or without an escrow agreement. In addition, it seems obvious that both parties would benefit from an early determination by

the Court of the pending issues of contract interpretation.  However, the Court also understands that Philips' claim that Imation and Moser Baer have created a sham arrangement to take advantage of the CLA will likely require further discovery.  While the Court is willing to entertain an early motion on the critical issues of contract interpretation, the Court does not want to encourage piece-meal litigation.  The Court trusts that the parties will agree on an appropriate motion calendar by which to place all contractual issues before the Court in an expeditious and efficient manner.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiff Imation Corp.'s Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 96) is **DENIED**.


Dated:  May 14, 2008             s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 Judge of United States District Court