# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IMATION CORP.,

      Plaintiff,

          v.

KONINKLIJKE PHILIPS ELECTRONICS
N.V., U.S. PHILIPS CORPORATION,
and PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION,

      Defendants.

Civ. A. No. 07-3668
(DWF/SRN)


**PHILIPS' MEMORANDUM
IN SUPPORT OF ITS
MOTION FOR JUDGMENT
ON THE PLEADINGS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KONINKLIJKE PHILIPS ELECTRONICS
N.V., U.S. PHILIPS CORPORATION and
PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION,

      Counterclaim and Third-Party
      Plaintiffs,

          v.

IMATION CORP.,

      Counterclaim Defendant,

         -and-

MOSER BAER INDIA LIMITED, GLOBAL
DATA MEDIA FZ-LLC, MBI
INTERNATIONAL FZ-LLC, MBI
INTERNATIONAL SERVICES PRIVATE
LIMITED, MBI I INDIA MARKETING
PRIVATE LIMITED, GLYPHICS MEDIA
INC., and MEMOREX PRODUCTS, INC.,

      Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

May 27, 2008

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................2

BACKGROUND ......................................................................................4

STANDARD ON THIS MOTION................................................................8

ARGUMENT...........................................................................................9

    I.     JUDGMENT ON THE PLEADINGS IS AN APPROPRIATE
         MECHANISM TO INTERPRET THE CLA...........................................9

    II.    GDM AND MEMOREX DO NOT HAVE
         A LICENSE UNDER THE CLA ..........................................................11

         A.    The Licenses Granted in the CLA
              Are Personal to Each Licensee.....................................................12

         B.    The CLA's "Subsidiary" Provision Does Not
              Extend a License to GDM or Memorex .....................................14

CONCLUSION ........................................................................................19

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Barker* v. *Ceridian Corp.*, 122 F.3d 628 (8th Cir. 1997) ................................. 15

*Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955 (2007) ......................................... 8

*Cook Inc.* v. *Boston Scientific Corp.*,
    208 F. Supp. 2d 874 (N.D. Ill. 2002) ................................................. 12-13

*Crumpley-Patterson* v. *Trinity Lutheran Hosp.*,
    388 F.3d 588 (8th Cir. 2004) ............................................................... 8

*Dore* v. *La Pierre*, 226 N.Y.S.2d 949 (Sup. Ct. 1962) ............................... 17, 18

*E.I. du Pont de Nemours & Co.* v. *Shell Oil Co.*,
    498 A.2d 1108 (Del. 1985) ................................................................ 13

*Enterprise Tools, Inc.* v. *Export-Import Bank of U.S.*,
    799 F.2d 437 (8th Cir. 1986) ............................................................. 17

*Finest Invs.* v. *Security Trust Co. of Rochester*,
    468 N.Y.S.2d 256 (App. Div. 1983) ............................................... 17, 18

*GE Engine Servs. UNC Holding I, Inc.* v. *Century Indem. Co.*,
    250 F. Supp. 2d 1237 (C.D. Cal. 2001) ............................................ 15

*Gilson* v. *Republic of Ireland*, 787 F.2d 655 (D.C. Cir. 1986) ....................... 12

*Guidant Sales Corp.* v. *George*, Civ. No. 05-2890 (PAM/JSM),
    2006 WL 3307633 (D. Minn. Nov. 14, 2006) ..................................... 8

*Herbert* v. *United States*, 36 Fed. Cl. 299 (1996) ........................................... 12

*Johnson Controls, Inc.* v. *Employers Ins.*,
    No. 89-CV-016174 (Milwaukee County Cir. Ct. Dec. 22, 1992) ............... 15

*Levenstein* v. *Salafsky*, 164 F.3d 345 (7th Cir. 1998) .................................. 9-10

*Local 257, Int'l Bhd. of Elec. Workers* v. *Grimm*,
    786 F.2d 342 (8th Cir. 1986) ............................................................... 9

*Maffei Bldg. Wrecking Corp.* v. *United States*,
   732 F.2d 913 (Fed. Cir. 1984) ................................................................. 9

*Maryland Cas. Co.* v. *W.R. Grace & Co.*,
   128 F.3d 794 (2d Cir. 1997) ....................................................... 16-17, 18

*Mastrobuono* v. *Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) ................................................................................ 15

*Moses.com Sec., Inc.* v. *Comprehensive Software Sys., Inc.*,
   406 F.3d 1052 (8th Cir. 2005) ................................................................ 4

*Nano-Proprietary, Inc.* v. *Canon Inc.*, No. 05-CA-258-SS,
   2007 WL 628792 (W.D. Tex. Feb. 22, 2007) ..................................... 7, 13

*New York* v. *R.J. Reynolds Tobacco Co.*,
   761 N.Y.S.2d 596 (App. Div. 2003) .................................................. 17, 18

*Ozyagcilar* v. *Davis*,
   1983 U.S. Dist. LEXIS 14419 (D.S.C. Aug. 23, 1983) ........................... 13

*Peltonen* v. *Branch No. 9*, Civil No. 05-605 (DWF/JSM),
   2006 WL 2827239 (D. Minn. Sept. 29, 2006) ........................................ 4

*In re CFLC, Inc.*, 89 F.3d 673 (9th Cir. 1996) .................................................. 12

*Rentways, Inc.* v. *O'Neill Milk & Cream Co.*,
   126 N.E.2d 271 (N.Y. 1955) .................................................................. 14

*Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH* v.
   *Schubert & Salzer Maschinenfabrik Aktiengesellschaft*,
   829 F.2d 1075 (Fed. Cir. 1987) .............................................................. 12

*Total Waste Mgmt. Corp.* v. *Commercial Union Ins. Co.*,
   857 F. Supp. 140 (D.N.H. 1994) ............................................................ 15

*Unarco Indus., Inc.* v. *Kelley Co.*,
   465 F.2d 1303 (7th Cir. 1972) ............................................................... 13

*Waldron* v. *Boeing Co.*, 388 F.3d 591 (8th Cir. 2004) ...................................... 8

*Westcott* v. *Omaha*, 901 F.2d 1486 (8th Cir. 1990) .......................................... 8

*Western Contracting Corp.* v. *Dow Chem. Co.*,
   664 F.2d 1097 (8th Cir. 1981) ................................................................. 9

*Winthrop Resources Corp.* v. *Eaton Hydraulics, Inc.*,
   361 F.3d 465 (8th Cir. 2004) ........................................................................ 9

*Wishnatsky* v. *Rovner*, 433 F.3d 608 (8th Cir. 2006) ......................................... 8

## MISCELLANEOUS

HAROLD EINHORN, PATENT LICENSING TRANSACTIONS (2007) ...................................... 13

JAMES ROGERS, PROTECT YOUR PATENT (2003) ............................................................ 12

4 SAMUEL WILLISTON & WALTER H.E. JAEGER,
   A TREATISE ON THE LAW OF CONTRACTS § 618 .................................................. 16-17

## PHILIPS' MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR JUDGMENT ON THE PLEADINGS

Koninklijke Philips Electronics N.V. ("Koninklijke Philips"), U.S. Philips

Corporation and Philips Electronics North America Corporation (collectively, "Philips"),

respectfully submit this memorandum in support of their motion for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking an

order (1) dismissing Counts Three and Four of the Complaint for Declaratory Judgment

(Docket No. 1) (the "Complaint") filed by plaintiff Imation Corp. ("Imation") and (2) in

favor of Philips on the First Cause of Action of the Amended Answer to Complaint

("Answer"), Counterclaims and Third-Party Complaint ("Counterclaims") (Docket

No. 83).  In short, Philips seeks a determination that the contract by which Imation claims

it is licensed expired by its plain terms long before Imation purportedly added

subsidiaries to be included under the contract.  A determination that those post-

termination added subsidiaries are not licensed would substantially streamline and

simplify this action.

In its decision denying Imation's request for a temporary restraining order

("TRO"), the Court noted "that both parties would benefit from an early determination

. . . of the pending issues of contract interpretation," and expressed a "willing[ness] to

entertain an early motion on the critical issues of contract interpretation," while seeking

to avoid "piece-meal litigation."  Memorandum Opinion and Order, dated May 14, 2008

(Docket No. 117) ("TRO Order"), at 10-11.  An early decision on the contractual

interpretation issue would, in fact, resolve a great number of outstanding issues in the

litigation, because most of the accused products in this case are "sold" by purported

Imation "subsidiaries" that Philips contends are not licensed under the contract.  Thus,

resolution of the contract issue likely would reduce substantially the number of disputed

issues and avoid events like those that gave rise to Imation's TRO motion.

In this motion, Philips asks the Court to resolve only a threshold contract

interpretation issue.  Although discovery is ongoing regarding various other claims and

theories advanced in this litigation—including Philips' contention that GDM is a "sham"

arrangement—no discovery is required for the Court to interpret the contract itself.

Indeed, both parties recognize that interpretation of the contractual language in dispute

involves a purely legal issue.

## Preliminary Statement

Pursuant to a 1995 cross-license agreement (the "CLA") for optical disc

technology, Philips and Minnesota Mining and Manufacturing ("3M") exchanged

royalty-free "personal" and "nontransferable" patent licenses to each other and their

subsidiaries as defined by the CLA.  That agreement unambiguously expired on March 1,

2000, but provided that any license that had been granted prior to the CLA's expiration

would extend for the life of the relevant patent.  Philips' patents proved to be—and

continue to be—extremely valuable to 3M and 3M's successor, Imation.

Not content with its profits from the licenses it obtained to Philips' patented

technology in the CLA, Imation has sought to extend its rights in ways that are not

permitted by that contract.  Specifically, in February 2003, Imation and Moser Baer India

Ltd. ("Moser Baer")—a company that has license agreements with Koninklijke Philips

that require payment of royalties pursuant to which it had in fact paid substantial

royalties—formed a purported joint venture called Global Data Media FZ-LLC

("GDM").  In a separate transaction, Imation acquired Memorex Products, Inc.

("Memorex") in April 2006.  Despite the undisputed fact that these entities were either

created or became affiliated with Imation long after the March 1, 2000 expiration of the

CLA, Imation claims that they were, as later-acquired "subsidiaries," somehow granted

licenses pursuant to the CLA in 2003 and 2006, and that those entities may thereby use

Philips' patented technology without paying any royalties.

      The language of the CLA is clear that Philips did not grant GDM or

Memorex a license.  Rather, the patent licenses granted in the CLA by Philips to 3M

(later Imation) and its subsidiaries during the term of the contract (1995 to 2000) are, as

that contract states explicitly, "personal" and "nontransferable" grants to each licensee.

Thus, Imation could not extend its license to Memorex or GDM and is not, as this Court

put it, "free forever to keep creating subsidiaries" that will become licensed under the

expired contract (Transcript of May 9, 2008 Hearing (Docket No. 119) ("Hearing Tr.") at

31).

      For these reasons, judgment on the pleadings—based solely on the parties'

pleadings and the contract itself—is the appropriate means for this Court to dismiss

Counts Three and Four of the Complaint and to find in favor of Philips on the First Cause

of Action of the Counterclaims.

## BACKGROUND

The relevant claims in the Complaint and Counterclaims start with the same basic facts giving rise to the dispute, and both rely heavily on the CLA itself.  (*See*, *e.g.*, Complaint ¶¶ 12-24; Counterclaims ¶¶ 28-32.)  The following sets forth the relevant undisputed facts from those pleadings and the pertinent terms of the CLA.[1]

### The Cross-License Agreement and Imation

In September 1995, Philips and 3M entered into the "Patent Cross-License Agreement for Optical and Magneto-Optical Information Storage and Retrieval Technology" (the "CLA").  (Complaint ¶ 12; Counterclaims ¶ 28.)  The CLA—which is governed by New York law (Art. 9 § 1)—provides that Philips and 3M grant to each other and, separately, to each other's "subsidiaries" (a defined term) a royalty-free "personal" and "nontransferable" license to use each other's patents for certain compact disc technologies, including recordable (CD-R) and rewritable (CD-RW) discs.  (Complaint ¶ 20; Counterclaims ¶ 29; CLA Art. 2 §§ 1, 2.)  The term "subsidiaries" is defined as entities "as to which the party now or hereafter has more than a fifty percent (50%) ownership interest."  (CLA Art. 1 §§ 12-13.)

---

[1]     The CLA is attached as Exhibit 1 to Philips' Amended Answer to Complaint, Counterclaims and Third-Party Complaint, and referred to throughout the parties' pleadings.  It is well settled that documents referred to in a complaint may be considered on a Rule 12 motion. *See*, *e.g.*, *Moses.com Sec., Inc.* v. *Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (noting that a document "specifically mentioned" in the complaint "as a ground for [plaintiff's] claims" is appropriate for the court to consider on a motion to dismiss); *Peltonen* v. *Branch No. 9*, Civil No. 05-605 (DWF/JSM), 2006 WL 2827239, at *13 n.6 (D. Minn. Sept. 29, 2006) (Frank, J.) (recognizing that materials "necessarily embraced by the pleadings" may be considered on motion on the pleadings) (internal quotation marks and citations omitted).

As noted above, the CLA provides that the specified licenses are "personal" and "nontransferable."  (CLA Art. 2 § 2.)  Moreover, Article 9, Section 6 of the CLA provides that "the rights and licenses granted herein are personal and may not be assigned, sublicensed, or otherwise transferred" without written consent unless, upon written notice, they are "assigned licensed, or transferred to an entity acquiring substantially all of the business of a party" to this agreement.

Article 4 of the CLA, entitled "EXPIRATION OF THIS AGREEMENT," provides that the contract expires on March 1, 2000.  The CLA specifically delineates those provisions of the CLA that extend beyond termination.  Article 4 also provides that a "patent license which has been granted under ARTICLE 2 shall continue thereafter for the term provided in ARTICLE 3."  (CLA Art. 4.)  Article 3, in turn, provides that each license's term continues for the life of the licensed patent unless a shorter period is imposed in any foreign country.  (CLA Art. 3.)

In 1996, 3M spun off Imation.  (Complaint ¶¶ 25-26; Counterclaims ¶ 33.) The parties do not dispute that 3M assigned its rights under the CLA to that spin-off company.  (Complaint ¶¶ 26, 27; Answer ¶ 27; Docket No. 34, Ex. A.)

### Moser Baer and GDM

The license to Philips' patents granted to Imation by the CLA proved to be extremely valuable to Imation, and that value vastly increased as the market for recordable optical media using Philips' patented technology boomed.  As set out in the Counterclaims, Imation was not content with the profits it could make from the license in the CLA and, after expiration of the contract, schemed with others such as Moser Baer to

leverage the "personal" and "nontransferable" royalty-free licenses in the CLA as assets that could, in essence, be sold to others.

In one such scheme, Imation set up an arrangement with Moser Baer, which had previously been paying royalties to Philips, such that Moser Baer could assert that it, too, had royalty-free licenses under the CLA.  In that arrangement, Imation and Moser Baer created nominal "subsidiaries" of Imation to take over—on paper—the sale of Moser Baer's products.

Specifically, in February 2003, Imation and Moser Baer, a manufacturer of optical storage discs that has royalty-bearing license agreements with Koninklijke Philips, created a purported joint venture called GDM, of which Imation claims to own 51%.  (Complaint ¶¶ 33-36; Counterclaims ¶¶ 34-36.)  According to Imation, after creating that entity, Moser Baer began supplying GDM with products that used Philips' patents.  (Complaint ¶¶ 38, 45.)  Moser Baer and Imation then asserted to Philips that GDM was covered by the CLA as an Imation "subsidiary," and thus no royalties were due for the use of Philips' patented technology on products for which Moser Baer had previously paid royalties.  (Complaint ¶ 38; Counterclaims ¶ 34.)

Although not at issue in this motion, Philips has alleged in the Counterclaims—and ultimately will prove, if necessary—that GDM is not covered by the CLA because GDM is a "sham" that is nothing more than a fiction created to evade

Moser Baer's obligation to pay Philips royalties in violation of Imation's contractual obligations to Philips.  (Counterclaims ¶¶ 37-44.)[2]

**Memorex**

In April 2006, Imation acquired Memorex.  (Complaint ¶¶ 39, 42; Counterclaims ¶ 46.)  Imation now contends that Memorex thereby gained a license pursuant to the CLA by then becoming an Imation "subsidiary." (Complaint ¶¶ 121-23.)

**This Litigation**

In August 2007, Imation filed its Complaint in the present action.  Philips answered on September 20, 2007, and filed counterclaims and third-party claims against Moser Baer, GDM, Memorex, as well as several other entities purporting to be "subsidiaries" of Imation, and amended that pleading on April 7, 2008.  Philips' counterclaims seek various forms of declaratory relief, along with damages for infringement of its U.S. patents and tortious interference.

As discussed at the hearing on Imation's TRO motion, the Third Amended Pretrial Scheduling Order (Docket No. 82) entered in this case anticipates that "Early Motions for Summary Judgment" will be filed on August 4, 2008.  As the Court recognized, however, Philips can "win on either one of two grounds"—by prevailing on its contention that the purported Imation subsidiaries are a sham, or because the CLA

---

[2]   Evidence supporting Philips' contention is set forth in more detail in Philips' Memorandum in Opposition to Imation's Motion for a Temporary Restraining Order (Docket No. 108).  As noted in that memorandum (at pages 21-23), courts have repeatedly rejected attempts to circumvent license agreements in such a fashion.  *See, e.g.*, *Nano-Proprietary, Inc.* v. *Canon Inc.*, No. A-05-CA-258-SS, 2007 WL 628792, at *6-*7, *13 (W.D. Tex. Feb. 22, 2007) (summarizing case law of courts "looking past the 'neatly tailored drafting' of contracts intended to circumvent a licensing agreement," and finding that Canon's "neatly tailored drafting" constituted an "intentional, willful" breach of license agreement).

does not make Imation "free forever to keep creating subsidiaries . . ." to be licensed under the CLA.  (Hearing Tr. at 31.)  A determination on the latter issue is purely a legal question turning on contract interpretation and is, therefore, appropriate for resolution at this earlier juncture.

As set forth more fully below, neither GDM nor Memorex has a license to Philips' patents under the CLA.  Accordingly, this Court should dismiss Counts Three and Four of Imation's Complaint and grant judgment for Philips on its First Cause of Action.

## STANDARD ON THIS MOTION

It is well settled that a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is evaluated under the same standards as a Rule 12(b) motion to dismiss.  *Westcott* v. *Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); *Wishnatsky* v. *Rovner*, 433 F.3d 608, 610 (8th Cir. 2006); *Waldron* v. *Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004); *Guidant Sales Corp.* v. *George*, Civ. No. 05-2890 (PAM/JSM), 2006 WL 3307633, at *2 n.1 (D. Minn. Nov. 14, 2006).  Such a motion should be granted if the plaintiff is not entitled to relief upon the facts alleged in the complaint.  *See Crumpley-Patterson* v. *Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).  Although well-pled factual allegations must be accepted as true, they must provide proper grounds for relief, and conclusory allegations will not suffice to defeat dismissal.  *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965-66 (2007).

## ARGUMENT

## I.   JUDGMENT ON THE PLEADINGS IS AN APPROPRIATE MECHANISM TO INTERPRET THE CLA.

The issue raised in this motion is appropriate for judgment on the pleadings because, as a matter of unambiguous contract interpretation, it is a question of law.  In *Winthrop Resources Corp.* v. *Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir. 2004), the Eighth Circuit explained that "[t]he determination that a contract is or is not ambiguous is a legal determination" and, "[i]f the contract is unambiguous, the interpretation is a question of law."  *Accord, e.g., Local 257, Int'l Bhd. of Elec. Workers* v. *Grimm*, 786 F.2d 342, 345 (8th Cir. 1986) ("interpretation of an unambiguous, written contract is a matter of law"); *Western Contracting Corp.* v. *Dow Chem. Co.*, 664 F.2d 1097, 1100 (8th Cir. 1981) ("As to the presence or absence of an ambiguity and interpretation of the contract, such a question is a matter of law . . . .").  As a question of law, the contract interpretation issue raised by this motion does not require factual determinations and is thus appropriate for the Court's determination at this juncture.  *Maffei Bldg. Wrecking Corp.* v. *United States*, 732 F.2d 913, 916 (Fed. Cir. 1984) (issue "is a matter of contract interpretation and thus presents a question of law which may be decided by this court for itself").

Moreover, the Court need not examine any documents or evidence other than the Complaint, the Counterclaims and the CLA—referenced throughout the Complaint and attached to the Counterclaims—to rule on this motion.  Accordingly, resolution pursuant to Rule 12 is appropriate.  *See, e.g., Levenstein* v. *Salafsky*, 164 F.3d

345, 347 (7th Cir. 1998) (observing that the rule allowing documents to be considered on

a motion to dismiss if they are referred to in the complaint and are central to plaintiff's

claim is "aimed at cases interpreting, for example, a contract").

In its motion for a temporary restraining order and preliminary injunction,

Imation stated that the CLA is unambiguous and that its interpretation presents a legal

issue for the Court:

> As a threshold matter, the interpretation of an unambiguous contract
> is a question of law for the Court. *Retail Assocs., Inc.* v. *Macy's East, Inc.*,
> 245 F.3d 694, 697 (8th Cir. 2001) (applying New York law); *accord*
> *Adirondack Transit Lines, Inc.* v. *United Trans. Union*, 305 F.3d 82, 85 (2d
> Cir. 2002) (applying New York law).  Whether a contract term is
> unambiguous is likewise a question of law for the court.  *White* v. *NFL*, 899
> F. Supp. 410, 413 (D. Minn. 1995) (applying New York law).
> ***Consequently, where the terms of an agreement are unambiguous, as is***
> ***the case with the CLA at issue here, the Court is well suited to make a***
> ***final determination.***
>
> A fundamental principle of contract interpretation is that an
> agreement is to be construed in accordance with the parties' intent.
> *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569, 780 N.E.2d 166,
> 750 N.Y.S.2d 565 (2002).  "The best evidence of what parties to a written
> agreement intend is what they say in their writing." *Id.* (citation omitted).
> As a result, a contract's terms must be construed so as to give effect to the
> intent of the parties as indicated by the language they chose to use.  *White,*
> 899 F. Supp. at 414 (citing *Slatt v. Slatt,* 64 N.Y.2d 966, 967, 477 N.E.2d
> 1099, 488 N.Y.S.2d 645 (1985)).  Because under New York law "[t]here is
> a heavy presumption that a deliberately prepared and executed written
> instrument manifests the true intentions of the parties[,]" *Emanuel Law*
> *Outlines, Inc. v. Multi-State Legal Studies, Inc.*, 899 F. Supp. 1081, 1087
> (S.D.N.Y. 1995) (applying New York law; citations omitted), a court
> construing a contract should give its words their plain and ordinary
> meaning. *White*, 899 F. Supp. at 414 (citing *Laba v. Carey,* 29 N.Y.2d 302,
> 308, 327 N.Y.S.2d 613, 277 N.E.2d 641 (1971)).
>
> ***The terms of the CLA are unambiguous***. . . .

(Imation Corp.'s Memorandum of Law in Support of Its Motion for a Temporary

Restraining Order and Preliminary Injunction (Docket No. 98) at 12-13 (emphasis added,

footnotes omitted).)  Because the parties to the contract agree that the CLA is

unambiguous, a determination of its meaning is appropriate for the Court on this motion.[3]

## II.    GDM AND MEMOREX DO NOT HAVE A LICENSE UNDER THE CLA.

In Article 2, Section 2 of the CLA, Philips granted "***to*** 3M and its

SUBSIDIARIES" a "personal" and "nontransferable" license for certain Philips patents.

(Emphasis added.)  By its terms, the CLA expired on March 1, 2000, and the only

licenses that continued after that date were those that already had been granted.  (CLA

Art. 4.)  Thus, any entity that had not been granted a license as of March 1, 2000 could

not acquire a license after that date.  Those personal licenses—granted separately under

Article 2 to Imation and its subsidiaries—could not be transferred, and Imation's

apparent contention that it can acquire new entities in perpetuity that will then acquire a

license is wrong.[4]

---

[3]    As set forth in Philips' opposition to Imation's TRO motion, courts have made clear that
they will look past "neatly tailored drafting" to assess whether a party is complying with a
license agreement (including "subsidiary" and "have made" terms such as those in the CLA).
Philips believes that extrinsic evidence also will support the parties' intent not to include in the
cross-license "sham" subsidiaries like GDM.  That issue, however, need not be resolved now,
and in fact may become moot after the Court's threshold contract interpretation.

[4]    The license grant in Article 2 is *not* granted solely to Imation, which is later defined to
include Imation and its subsidiaries; rather the license grant itself is to Imation "and its
SUBSIDIARIES."

### A.   The Licenses Granted in the CLA
Are Personal to Each Licensee.

Philips did not in the CLA grant a license to non-existent entities or entities that had no affiliation to 3M (later Imation).  Rather, the CLA provides that, during the term of the contract, Philips grants licenses "to" specific entities:  to 3M and its subsidiaries and, after the assignment, to Imation and its subsidiaries.  (CLA Art. 1 §§ 12, 13; Art. 2 § 2; Art. 4.)  The licenses are, as the CLA provides, "personal" to those entities, not open-ended licenses of Philips' patents to unidentified parties.

The law is to the same effect.  It is well established that a patent license is a contractual agreement that the patent owner will not sue the *licensee* for infringement so long as that *licensee* operates within the bounds of the contract.  *See Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH* v. *Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987); *Herbert* v. *United States*, 36 Fed. Cl. 299, 304 n.3 (1996); JAMES ROGERS, PROTECT YOUR PATENT 150 (2003).  Thus it is only the *licensee* who receives an interest in the patent from the patent owner pursuant to such a contract.  *Gilson* v. *Republic of Ireland*, 787 F.2d 655, 658 (D.C. Cir. 1986) ("It is well settled that a non-exclusive licensee of a patent has only a personal and not a property interest in the patent. . . ."); *In re CFLC, Inc.*, 89 F.3d 673, 679 (9th Cir. 1996) ("Federal law holds a nonexclusive patent license to be personal and nonassignable. . . .").

As a result, a patent license is a limited grant of rights, unique to the recipient.  As the court in *Cook Inc.* v. *Boston Scientific Corp.* explained, "a patent

-12-

license is personal to the licensee and allows only the activities enumerated within the license." 208 F. Supp. 2d 874, 879 (N.D. Ill. 2002); *accord*, *e.g.*, *Nano-Proprietary*, 2007 WL 628792, at *11; *E.I. du Pont de Nemours & Co.* v. *Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985).  For that reason, a licensee may not assign a portion or all of its rights to a third-party without express authorization in the license agreement, *Unarco Indus., Inc.* v. *Kelley Co.*, 465 F.2d 1303, 1306 (7th Cir. 1972); HAROLD EINHORN, PATENT LICENSING TRANSACTIONS § 2.04 (2007), nor may it grant sublicenses without express permission, *Ozyagcilar* v. *Davis*, 1983 U.S. Dist. LEXIS 14419, at *24 (D.S.C. Aug. 23, 1983); EINHORN § 2.05.  Here, the contract expressly precluded the assignment, sublicense or transfer of the "personal" rights granted thereunder. (CLA Art. 9 § 6.)

The CLA specifically granted a license only "to" 3M/Imation and its subsidiaries.  Moreover, it granted such licenses only until the agreement's expiration on March 1, 2000, after which no further licenses were available under the agreement.  (*See* CLA Art. 4.)  If an entity was not a "subsidiary" when the CLA experied, it is not granted a license merely because it became a purported subsidiary after the CLA expired.  There is no dispute that, as of March 1, 2000, neither GDM nor Memorex had received a license, nor was either an Imation subsidiary.  Accordingly, because GDM (formed in 2003) and Memorex (acquired by Imation in 2006) had no license on March 1, 2000, neither has a license now.

**B.**     **The CLA's "Subsidiary" Provision Does Not
Extend a License to GDM or Memorex.**

In spite of the clear language of the CLA, Imation contends that, because

GDM and Memorex became Imation subsidiaries in 2003 and 2006, respectively, they

are now entitled to a license under the CLA.  To support this theory, Imation apparently

takes the position that, because Article 1, Section 13 of the CLA defines "subsidiary" as

entities "as to which the party now or *hereafter* has more than a fifty percent (50%)

ownership interest" (emphasis added), any entity such as GDM and Memorex may obtain

a license whenever they became Imation subsidiaries, even years after the expiration of

the CLA.  By this reasoning, countless entities could become affiliated with 3M/Imation

after the CLA's expiration and would immediately be entitled to licenses from the

expired contract.  But Imation cannot rely on the word "hereafter" to extend licenses to

post-expiration subsidiaries, for two primary reasons.

*First*, the CLA did not define "subsidiaries" to include entities that became

affiliated with Philips or 3M *after* expiration of that contract.  Rather, the word

"hereafter" in the definition is included to provide that entities becoming subsidiaries

*during the term of the contract* will be entitled to a license, rather than limiting the

licenses to those 3M/Imation subsidiaries in existence on the contract's effective date.  To

expand that provision to include post-expiration-created subsidiaries would

impermissibly read the expiration provision out of the CLA.  *Cf. Rentways, Inc.* v.

*O'Neill Milk & Cream Co.*, 126 N.E.2d 271, 273 (N.Y. 1955) (holding that if a contract

were interpreted to extend a party's rights beyond the contract's termination date, the

-14-

"duration provision would, in effect, be read out of the contract"); *see generally Mastrobuono* v. *Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63 (1995) (citing the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other"); *Barker* v. *Ceridian Corp*., 122 F.3d 628, 637 (8th Cir. 1997) ("An elementary rule of contract interpretation is that a contract should be construed so as to give effect to all the contract's provisions.") (internal quotation marks omitted).

  As courts have recognized, the term "hereafter" must be "read in conjunction" with the "period limitation" of a contract; it "cannot reasonably be read as referring to any time in the indefinite future."  *GE Engine Servs. UNC Holding I, Inc*. v. *Century Indem. Co*., 250 F. Supp. 2d 1237, 1243 (C.D. Cal. 2001) (internal citations and quotation marks omitted).  Thus, the term "hereafter" cannot be read so expansively that it would "not only cover . . . a company that had no legal or factual connection" with the original contracting entity during the term of the contract but also "any company acquired by [that original entity] until the end of time."  *Total Waste Mgmt. Corp*. v. *Commercial Union Ins. Co*., 857 F. Supp. 140, 147 (D.N.H. 1994) (quoting *Johnson Controls, Inc*. v. *Employers Ins.,* No. 89-CV-016174, slip op. at 7-8 (Milwaukee County Cir. Ct. Dec. 22, 1992)).  These decisions are directly applicable here, and make clear that the definition of

"subsidiaries" in the CLA refers *only* to entities that were or became subsidiaries during the term of that contract.[5]

Indeed, another provision of the CLA makes clear that the "now or hereafter" language of Article 1, Section 13 does not extend the definition of "subsidiaries" to entities that become affiliated with Imation after expiration of the contract. Article 1, Section 12(1) of the CLA provides that "LICENSED PATENTS" include only patents that "are owned or controlled by the granting party or any of its SUBSIDIARIES such that such party or its SUBSIDIARIES ***now*** has ***or hereafter*** obtains the right to grant the licenses within the scope of this Agreement." (Emphasis added.) As Imation concedes (Hearing Tr. at 86-87), that language is limited to rights to grant patent licenses that either party or its subsidiaries obtain *during the term of the CLA* (*i.e.*, prior to March 1, 2000).[6]

It is a basic tenet of contractual interpretation that terms "normally have the same meaning throughout the [contract] in the absence of a clear indication that different meanings were intended." *Maryland Cas. Co.* v. *W.R. Grace & Co.*, 128 F.3d 794, 799 (2d Cir. 1997) (interpreting contract under New York law; citing 4 SAMUEL WILLISTON

---

[5]     If contracting parties intend for certain rights and obligations to continue past the expiration of the contract, they can do so explicitly, as the CLA does for certain other rights. (*See* CLA Art. 9 § 4 (providing that the contract's confidentiality obligation lasts 10 years from the effective date, rather than terminating March 1, 2000); CLA Art. 4 (providing for the continuation after March 1, 2000 of licenses that have *already been granted*, but *not* for the granting of new licenses).) The parties did not do so with respect to subsidiaries formed post-termination.

[6]     It would make no sense to read the "now . . . or hereafter" language in Section 12(1) to refer to rights that subsidiaries obtained *after* March 1, 2000, because the CLA only grants licenses *prior* to that date. Imation agrees, noting that the March 1, 2000 expiration date "close[d] the patent portfolio that is cross licensed." (Hearing Tr. at 86-87.)

& WALTER H.E. JAEGER, A TREATISE ON THE LAW OF CONTRACTS § 618, at 715-16 (3d ed. 1961)); *accord, e.g., New York* v. *R.J. Reynolds Tobacco Co.*, 761 N.Y.S.2d 596, 596-97 (App. Div. 2003) (giving a phrase "presumptively . . . the same meaning" in one clause as another); *Finest Invs.* v. *Security Trust Co. of Rochester*, 468 N.Y.S.2d 256, 258 (App. Div. 1983) ("We may presume that the same words used in different parts of a writing have the same meaning"); *Dore* v. *La Pierre*, 226 N.Y.S.2d 949, 952 (Sup. Ct. 1962) ("A word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons." (internal quotation marks omitted)); *see also Enterprise Tools, Inc.* v. *Export-Import Bank of U.S.*, 799 F.2d 437, 441 (8th Cir. 1986) ("common sense reading of the policy indicates that the single definition of 'loss' . . . had the same meaning" throughout contract).  Thus, because Article 1, Section 12(1) indisputably refers to events during the term of the CLA only, the same interpretation must be given to Article 1, Section 13.

At the TRO hearing, Imation made clear that it asks the Court to interpret the same language in two different sections of the CLA inconsistently.  At that hearing, Imation contended that the "expiration date [of the CLA] . . . is to close the patent portfolio that is cross licensed."  (Hearing Tr. at 86-87.)  In other words, Imation contends that the expiration clause applies *solely* to Article 1, Section 12 of the CLA— the provision defining which patents are included in the license.  To sustain this interpretation, however, Imation would have to read the term "now . . . or hereafter" in that provision as limited by the contract's expiration date, while reading the *identical language* in the adjacent provision as granting an open-ended license.

There is no basis in the contract for Imation's proposed construction.  It makes no sense to say that the expiration clause should apply to the "licensed patent" provision (Article 1, Section 12), but *not* to the "subsidiary" provision sitting right next to it (Article 1, Section 13).  *Both* provisions contain the same "now . . . or hereafter" language, and *both* are subject to the expiration date of March 1, 2000.  *See Maryland Cas. Co.*, 128 F.3d at 799; *R.J. Reynolds Tobacco Co.*, 761 N.Y.S.2d at 596-97; *Finest Invs.*, 468 N.Y.S.2d at 258; *Dore*, 226 N.Y.S.2d at 952.  There is no indication in the CLA that the two identical phrases should be read differently, much less the "clear indication" required to support Imation's argument.  *Maryland Cas. Co.*, 128 F.3d at 799.

*Second*, even if GDM and Memorex were to fall within the definition of "subsidiaries" (which they cannot), those entities still would not receive a license pursuant to the CLA.  The CLA provides that only a "patent license which has been granted" prior to March 1, 2000 "shall continue" after that date.  (CLA Art. 2 § 2; Art. 4 (providing that "[t]he term of this Agreement shall expire on March 1, 2000, except that any patent license which *has been* granted under ARTICLE 2 shall continue . . .") (emphasis added).)  Even if an entity—such as Memorex or GDM—became a "subsidiary" after March 1, 2000, there was no patent license "which has been granted" to that subsidiary prior to expiration that could thus "continue."  To the contrary, as indicated above, the contract and law are clear that the CLA's patent licenses are limited grants of rights that are unique to the recipients.  *See* pp. 11-12, *supra*.  No license to GDM could be granted in 2003 or to Memorex in 2006 that "shall continue" past March 1, 2000.

-18-

*          *          *

The plain language in which the license is granted—Article 2, Section 2—provides that the grant is to 3M/Imation "and its subsidiaries."  It simply defies logic to claim as Imation does that the Section 2 grant can be extended beyond March 1, 2000 to an entity that had no relationship to Imation when the CLA expired and the license grant ceased.

## CONCLUSION

Wholly apart from the other issues raised in the Complaint and Counterclaims, because GDM was created in 2003 and Memorex acquired in 2006, those entities are not licensed pursuant to the CLA, which expired on March 1, 2000. Accordingly, and for the foregoing reasons, Counts Three and Four of the Complaint should be dismissed with prejudice, and the Court should find in favor of Philips on the First Cause of Action of the Counterclaims.

Dated:  May 27, 2008

Respectfully submitted,

/s/Kurt J. Niederluecke

Of Counsel:                                Darren Schwiebert (#0260642)
                                           Kurt J. Niederluecke (#271597)
Garrard R. Beeney                          FREDRIKSON & BYRON, P.A.
Marc De Leeuw                              200 South Sixth Street, Suite 4000
Adam Brebner                               Minneapolis, Minnesota  55402-1425
Jessica M. Klein
SULLIVAN & CROMWELL LLP                    *Attorneys for Koninklijke Philips*
125 Broad Street                           *Electronics N.V., U.S. Philips*
New York, New York  10004                  *Corporation, and Philips Electronics*
                                           *North America Corporation*

4375936_1.DOC