# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Imation Corporation, a
Delaware corporation,

     Plaintiff,

v.

Koninklijke Philips Electronics N.V., a foreign
corporation; U.S. Philips Corporation, a
New York corporation; and Philips Electronics
North America Corporation, a Delaware corporation,

     Defendants;

Koninklijke Philips Electronics N.V., a foreign
corporation; U.S. Philips Corporation, a
New York corporation; and Philips Electronics
North America Corporation, a Delaware corporation,

     Counterclaim and Third-Party-Claim
     Plaintiffs,

v.

Imation Corp.,

     Counterclaim Defendant;

and

Moser Baer India Limited; Global Data
Media FZ-LLC; MBI International
FZ-LLC; MBI International Services
Private Limited; MBI India Marketing
Private Limited; Glyphics Media Inc.;
and Memorex International Products, Inc.,

     Third-Party Defendants.

Civil No. 07-3668 (DWF/AJB)

**MEMORANDUM
OPINION AND ORDER**

_____

B. Todd Jones, Esq., Richard M. Martinez, Esq., Jennifer L. McKenna, Esq., Ronald J. Schutz, Esq., Allen A. Slaughter, Jr., Esq., and Amy N. Softich, Esq., Robins Kaplan Miller & Ciresi LLP, counsel for Imation Corp., Glyphics Media Inc., Global Data Media FZ-LLC, MBI India Marketing Private Limited, MBI International FZ-LLC, MBI International Services Private Ltd., and Memorex International, Inc.

Garrard Beeney, Esq., Adam R. Brebner, Esq., Marc De Leeuw, Esq., and Jessica Klein, Esq., Sullivan & Cromwell LLP; and Laura L. Myers, Esq., Kurt J. Niederluecke, Esq., and Darren B. Schwiebert, Esq., Fredrikson & Byron, PA, counsel for Koninklijke Philips Electronics N.V., U.S. Philips Corporation, and Philips Electronics North America Corporation.

Sonya R. Braunschweig, Esq., Alan L. Kildow, Esq., DLA Piper US LLP; and Jeffrey G. Randall, Esq., Albert L. Hogan, III, Esq., Skadden, Arps, Slate, Meagher & Flom, counsel for Moser Baer India Limited.

_____

## INTRODUCTION

This matter is before the Court pursuant to a Motion for Judgment on the Pleadings brought by Defendants Koninklijke Philips Electronics N.V., U.S. Philips Corporation, and Philips Electronics North America Corporation (collectively, "Philips"). Philips seeks an order dismissing Counts Three and Four of the Complaint for Declaratory Judgment filed by Plaintiff Imation Corporation ("Imation"), and in favor of the First Cause of Action of Philips' Amended Answer to Complaint, Counterclaims, and Third-Party Complaint.  For the reasons stated below, Philips' motion is granted.

## BACKGROUND

Imation develops, manufactures, and sells optical and magnetic media storage products.  Philips holds numerous patents necessary to manufacture recordable and

rewritable optical discs.  Philips both sells its own branded discs and licenses its patents to others.

Imation and Philips are parties to a 1995 Patent Cross-License Agreement for Optical and Magneto-Optical Information Storage and Retrieval Technology (the "CLA").[1]  The CLA provides for the cross-grant of royalty-free, non-exclusive patent licenses.  With respect to Imation's rights under the CLA, Philips agreed to the following:

> PHILIPS agrees to grant and does hereby grant to [Imation] and its SUBSIDIARIES a personal, non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under PHILIPS LICENSED PATENTS to make, have made, make for others, use, lease, distribute, offer to sell, sell, import, or otherwise dispose of LICENSED PRODUCTS. Further, PHILIPS agrees to grant and does hereby grant to [Imation] and its SUBSIDIARIES a personal non-exclusive, indivisible, non-transferable, irrevocable, world-wide royalty-free license under PHILIPS LICENSED PATENTS to practice any LICENSED PROCESS in the course of making, having made, making for others, using, leasing, distributing, offering to sell, selling, importing, or otherwise disposing of LICENSED PRODUCTS.

(Philips' Am. Answer to Compl., Countercls. and Third-Party Compl. ¶ 13, Ex. 1 (the "CLA"), Art. 2, § 2.)  The CLA defines "subsidiary" as:

> [A]ny corporation, firm, partnership, proprietorship or other form of business organization as to which the party now or hereafter has more than a fifty percent (50%) ownership interest or, if not more than fifty percent ownership, then the maximum ownership interest it is permitted to have in the country where such business organization exists. . . .

(CLA Art. 1, § 13.)

---

[1]     The CLA was originally entered into between Philips and Minnesota Mining and Manufacturing Company ("3M").  The parties do not dispute that 3M subsequently created Imation as a "spin off" company and that Imation succeeded to 3M's rights and obligations under the CLA.

The CLA contains an expiration clause that reads as follows:

ARTICLE 4
EXPIRATION OF THIS AGREEMENT

The term of this Agreement shall expire on March 1, 2000, except that any patent license which has been granted under ARTICLE 2 shall continue thereafter for the term provided in ARTICLE 3.

(CLA Art. 4.)   Article 3 of the CLA, in turn, provides:

ARTICLE 3
TERM OF PATENT LICENSE GRANTS

The term of the licenses granted under ARTICLE 2 shall commence on the effective date of this Agreement and shall continue as to each LICENSED PATENT for its life, or for such shorter period as may be imposed in any country by the government of that country.

(CLA Art. 3.)

Moser Baer India Limited ("Moser Baer") is a manufacturer of recordable optical storage discs and had royalty-bearing license agreements with Philips.  In February 2003, Imation and Moser Baer created a global joint venture named Global Data Media FZ-LLC ("GDM").  Imation claims to own 51% of GDM and that GDM is a majority-owned subsidiary of Imation.   After the creation of GDM, Moser Baer began supplying GDM and Imation with products that used Philips' patents.  Moser Baer and Imation contend that no royalties were due to Philips because GDM was licensed under the CLA as an Imation subsidiary.

In 2006, Imation acquired Memorex International, Inc. ("Memorex").  Imation asserts that Memorex is a wholly-owned subsidiary of Imation and licensed under the CLA.

Imation filed this declaratory judgment action in August 2007, seeking an interpretation of its rights under the CLA.  In its Complaint for Declaratory Judgment, Imation seeks a declaration that it, as the corporate successor to 3M, is a beneficiary under the CLA; that Imation's subsidiaries are properly operating under the CLA[2]; that certain patented DVD technology is covered by the CLA; that Imation does not infringe any valid claim of certain patents; and that certain patents are invalid.

Philips answered Imation's Complaint and filed counterclaims against Imation and third-party claims against Moser Baer, GDM, Memorex, and several other entities. Philips seeks declaratory relief and damages for patent infringement and tortious interference.

Presently before the Court is Philips' motion for judgment on the pleadings. Philips seeks a determination as to whether GDM and Memorex have valid licenses to Philips' patents under the CLA in light of the fact that they purportedly became Imation subsidiaries after the expiration of the CLA.

## DISCUSSION

### I.    Standard of Review

The Court evaluates a motion for a judgment on the pleadings brought under Rule 12(c) under the same standard as a motion brought under Rule 12(b)(6).  *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences

---

[2]    In particular, Imation seeks a declaration that GDM and Memorex, as subsidiaries, may validly exercise royalty-free, have-made rights under the CLA.

from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott*, 901 F.2d at 1488. A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964–65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

## II.    Contract Interpretation

The parties agree that the issue before the Court involves the interpretation of certain terms of the CLA. Both parties assert that the CLA is unambiguous and each party urges the Court to adopt an interpretation that it maintains reflects the plain and ordinary meaning of the CLA. Philips asks the Court to interpret the CLA so as to require any entity claiming a valid license as a subsidiary under the CLA to have been granted a license prior to the expiration of the CLA on March 1, 2000. Imation and Moser Baer, on the other hand, assert that the CLA's definition of subsidiary does not

contain a temporal limitation and that any licenses granted to Imation subsidiaries created after March 1, 2000, are valid.

The parties agree that the CLA provides the cross-grant of royalty-free, non-exclusive patent licenses and that Philips granted patent licenses to Imation and its subsidiaries. The parties' dispute relevant to this motion centers on the meaning of the CLA's expiration provision in Article 4, the CLA's definition of "Subsidiary" in Article 1, and the interplay between these two provisions of the CLA. Also relevant to the Court's discussion is the CLA's definition of "Licensed Patents:"

> "LICENSED PATENTS" shall mean any and all patents, utility models, inventor certificates, and design patents and registrations of all countries of the world (including any applications, continuations, continuations-in-part, divisionals, reissues, reexamined patents, or extensions thereof) which:
>
> (1) are owned or controlled by the granting party or any of its SUBSIDIARIES such that such party or its SUBSIDIARIES now has or hereafter obtains the right to grant the licenses within the scope of this Agreement;
> (2) relate to optical or magneto-optical information storage and retrieval technology; and
> (3) have a filing date, or claim priority from a date, or are or were entitled to claim priority from a date, on or before the expiration date of this Agreement as set forth in Article 4, herein.

(CLA, Art. 1 § 12.)

**A.    The Parties' Positions**

In support of its motion for judgment on the pleadings, Philips asserts that pursuant to the unambiguous language of Article 4, the term of the CLA expired on March 1, 2000. Philips contends that no new licenses could be granted after that date. Philips points to language in the CLA providing that Philips grants a license to "[Imation]

and its SUBSIDIARIES" that is "personal" and "non-transferable."  Philips also points to

the CLA's March 1, 2000, expiration provision, and specifically to the language that

excepts from expiration "any patent license *which has been granted under Article 2."*

(CLA Art. 4 (emphasis added).)  Philips contends that if an entity was not a subsidiary at

the time the CLA expired, then that entity could not have had a license under the CLA as

of March 1, 2000, and, therefore, is not now licensed under the CLA.  According to

Philips, because GDM and Memorex were not Imation subsidiaries as of March 1, 2000,

they cannot claim to own a license under the CLA.[3]

　　　　Philips also asserts that GDM and Memorex are not "subsidiaries" as the term is

defined under the CLA because they became affiliated with Imation after the CLA

expired.  Philips argues that the "hereafter" language in the definition of "subsidiary"

refers to activity during the term of the CLA and does not allow Imation to indefinitely

create subsidiaries that are licensed under the CLA.  In support, Philips points out that the

"hereafter" language is used twice in the CLA— first, in the definition of "subsidiary"

and again in the definition of "Licensed Patents"—and argues that in each case the

"hereafter" language refers to a time period that ends with the CLA's expiration on

March 1, 2000.  In particular, Philips highlights the language of the CLA that provides

that "LICENSED PATENTS" include only patents that "are owned or controlled by the

granting party or any of its SUBSIDIARIES such that such party or its SUBSIDIARIES

*now has or hereafter* obtains the right to grant the licenses within the scope of the

---

[3]　　　Philips maintains that GDM and Memorex cannot claim a license under the CLA
even if GDM and Memorex are considered "subsidiaries" under the CLA.  The CLA's
definition of "subsidiary" is discussed below.

Agreement."  (Art. 1, § 12(1) (emphasis added).)  Philips argues that the "hereafter" language in Article 1, section 12(1) refers to events occurring during the term of the CLA, and that the same interpretation must be given to the "hereafter" language in the definition of "subsidiary."

In its opposition, Imation asserts that GDM and Memorex are validly licensed under the CLA even though they were not Imation subsidiaries until after the March 1, 2000 expiration date.  Imation contends that Article 4's expiration provision has only one purpose—to close the pool of patents licensed under the CLA.  Imation asserts that Article 4 was not intended to act as a cutoff date with respect to "subsidiaries" under the CLA.  In support, Imation points to the definition of "Licensed Patents" and in particular the incorporation of the March 1, 2000, expiration date into Article 1, section 12(3).  (*See* Art. 1, § 12(3) (providing that licensed patents shall mean any patent that, among other things has "a filing date, or claim priority from a date, or are or were entitled to claim priority from a date, on or before the expiration date of this Agreement as set forth in Article 4, herein").)  Imation points out that Article 1, section 12(3) is the only provision in the CLA that cross-references Article 4's expiration provision and asserts that the parties therefore intended that the CLA's expiration date would apply only to limit which patents would be licensed under the CLA.

Imation further contends that the licenses that are granted to Imation and its subsidiaries under Article 2 of the CLA survive Article 4's expiration date.  Imation asserts that because the CLA does not expire as to Imation, it likewise does not expire as to its subsidiaries, including those not in existence as of the expiration of the CLA.  In

support of this contention, Imation focuses on the definition of "subsidiary," and in particular the use of the term "hereafter" as it appears in that definition.  Imation asserts that by including the term "hereafter," the parties placed no time limitation on the creation of a validly licensed subsidiary and that the definition of "subsidiary" unambiguously permits subsidiaries that are created after March 1, 2000, to obtain valid licenses under the CLA.  Imation contends that if the parties had intended for the March 1, 2000 expiration date to apply to the definition of "subsidiary," they would have added that limitation to the "subsidiary" definition, as they did with the definition of "Licensed Patents."

In its opposition to Philips' motion, Moser Baer asserts that the CLA does not support Philips' distinction between subsidiaries created or acquired on or before March 1, 2000, and those subsidiaries created or acquired after that date.  Moser Baer asserts that the inclusion of the language "now or hereafter" precludes the imposition of a cutoff date.  Moser Baer also points to the incorporation of a cutoff date in the definition of "licensed patents," and argues that the lack of such language in the subsidiary provision demonstrates that the parties did not intend to restrict the definition to subsidiaries created or acquired on or before March 1, 2000.  Moser Baer asserts that the "now or hereafter" language in the definition of "subsidiary" shows that the parties intended the definition to encompass subsidiaries that came under Imation's ownership after they entered into the CLA and that the definition was not limited to the March 1, 2000 date.  Moser Baer contends that the parties could have added the language "now or on or before the expiration of this Agreement" if they had intended to impose a cutoff

date of March 1, 2000.  Moser Baer further asserts that the parties did impose such a cutoff date in defining licensed patents under the CLA.  Moser Baer contends that this constitutes compelling evidence that the parties did not intend to limit the definition of licensed subsidiaries.

Moser Baer also asserts that the "now or hereafter" definition of licensed subsidiaries is consistent with the "now has or hereafter obtains" language in the definition of licensed patents.  In particular, Moser Baer asserts that the "now has or hereafter obtains" language in the definition of licensed patents is open-ended and does not incorporate a cutoff date of March 1, 2000.  Moser Baer argues that neither the subsidiary nor the licensed patent definitions should be read as to impose a cutoff date. Instead Moser Baer contends that a patent that came under a party's ownership or control after March 1, 2000, is a licensed patent under the CLA, so long as it meets the other requirements of a "Licensed Patent" under the CLA.

Moser Baer also contends that Philips' interpretation of the phases "now or hereafter" and "now has or hereafter obtains" creates an inconsistency within the definition of licensed patents.  In particular, Moser Baer asserts that if Article 1, section 12(1) is limited to patents that are owned or controlled by March 1, 2000, then the expiration date in section 12(3) would be superfluous.

Finally, both Imation and Moser Baer assert that if the Court does not deny Philips' motion, it should convert it into a motion for summary judgment and allow discovery so that the parties can present extrinsic evidence of whether the parties to the

CLA intended to treat subsidiaries created or acquired after March 1, 2000, as licensed subsidiaries.

### B.    The Court's Analysis

The interpretation of an unambiguous contract is a question of law for the Court. *Retail Assocs., Inc. v. Macy's East, Inc.*, 245 F.3d 694, 697 (8th Cir. 2001) (applying New York law).[4]  A contract's terms are to be construed "so as to give effect to the intent of the parties as indicated by the language of the contract." *White v. NFL*, 899 F. Supp 410, 414 (D. Minn. 1995) (applying New York law).  The court gives the words in a contract their plain and ordinary meaning, unless context mandates a different interpretation. *Id*.  In construing a contract, the court considers the entire contract. *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) (applying New York law). Terms in a contract normally have the same meaning throughout the contract in the absence of a clear indication that the parties intended different meanings. *See Maryland Casualty Co. v. W.R. Grace and Co.*, 128 F.3d 794, 799 (2d Cir. 1997).  With these principles in mind, the Court turns to the interpretation of the CLA.

### 1.    *The Expiration Clause*

Pursuant to the CLA, Philips granted Imation and its subsidiaries a "personal, non-exclusive, indivisible, nontransferable, irrevocable, worldwide, royalty-free license under" its "licensed patents."  (CLA Art. 2, § 2.)  Further, the CLA contains an expiration clause, which provides that the term of the CLA "shall expire on March 1, 2000, except

---

[4]     The CLA provides, and the parties agree, that New York law applies.  (CLA Art. 9.)

that any patent license which has been granted under Article 2 shall continue thereafter for the term provided in Article 3." (CLA Art. 4.) Imation and Philips both agree that "Imation and its SUBSIDIARIES" are directly licensed under the CLA.[5] (Doc. No. 145 (Imation's Mem. in Opp'n to Philips' Mot. for J. on the Pleadings) at 5 (stating that "GDM and Memorex are **directly** licensed under the CLA, rather than being indirectly licensed through Imation") (emphasis in original).) The Court agrees that the plain language of the CLA supports the view that subsidiaries under the CLA are directly licensed.

In addition, the CLA's expiration provision unambiguously provides that the CLA expired on March 1, 2000, with the exception that any patent license which *had been granted* prior to that date continues for the term provided in Article 3. Neither GDM nor Memorex were Imation subsidiaries as of March 1, 2000. Because those two entities did not become Imation subsidiaries until after the CLA expired, they could not have had been granted a license as of the date of expiration. Therefore, the Court concludes that GDM and Memorex do not have valid licenses under the CLA.

In reaching this decision, the Court rejects the proposition that the CLA's expiration clause operates solely to close the pool of patents licensed under the CLA. The expiration provision is contained as its own Article which reads "Expiration of This

---

[5]     Moser Baer asserts that Philips granted a single license to a group of licensees comprised of Imation and its subsidiaries, including subsidiaries formed after March 1, 2000. The assertion of a "group license" is incompatible with the language of the CLA, which, despite its reference to a singular license in Article 2, section 2, plainly contemplates the grant of multiple "personal" licenses. (*See, e.g.*, Art. 2 ("Grant of Royalty Free Licenses"); Article 3 ("The term of the licenses granted under Article 2 . . . .").)

Agreement."  (CLA Art. 4.)  It further provides that "[t]he term of this Agreement shall expire on March 1, 2000."  By its unambiguous language, the expiration provision applies to the CLA as a whole.  There is simply nothing in the language of Article 4, or elsewhere in the CLA, that indicates that the CLA's expiration provision applies only to close the pool of patents covered by the CLA and not to the CLA generally.[6]

In support of its argument that the CLA's expiration provision serves to limit only the patents licensed, Imation relies on *United States v. Radio Corp. of America ("RCA")*, 117 F. Supp. 449 (D. Del. 1954).   In *RCA*, the court addressed the issue of whether certain patent licenses that were granted to continue in force during the lives of the patents included the right to grant sub-licenses during that same period.  *RCA*, 117 F. Supp. at 450-51.  In *RCA*, the patent license agreement expressly granted the licensee, RCA, the right to grant non-exclusive sublicenses to others.  *Id.* at 451.  In addition, the patent license agreement provided that the licenses "shall, during the terms of the several patents . . . in respect of which such licenses exist at the date of terminations, continue unaffected and of the same scope and character herein expressed . . . ."  *Id*. at 452.  The court in *RCA* held that those licenses, which included the right to sublicense and which were to continue on the same terms after termination, entitled RCA to continue to sublicense during the lives of the patents and that RCA's sublicensing rights survived the

---

[6]     That the expiration provision is cross-referenced in the definition of "Licensed Patents" does not alter the Court's conclusion.  As explained more fully below, each subsection of Article 1, section 12, contains a separate requirement for "Licensed Patents" under the CLA.  Article 1, section 12(3), contains the requirement that a "Licensed Patent" "have a filing date . . . on or before the expiration of this Agreement." (CLA Art. 1, ¶ 12(3).) This requirement is not inconsistent with the CLA's general expiration provision.

termination date of the license agreement.  *Id*. at 453.  The Court also stated that " the sole purpose of the termination date . . . is to operate as a cutoff date after which new inventions by the parties shall not become subject to the agreement."  *Id*. at 454.  Imation argues that its rights under the CLA similarly survive the expiration of the CLA, including the licensing rights to its subsidiaries.  The Court disagrees and points out that the *RCA* case is distinguishable from the case at hand in at least one key respect.  The court in *RCA* examined the issue of whether rights under a license agreement that were granted prior to the expiration of the agreement can, by the terms of the agreement, continue after the expiration of an agreement.  Here, the CLA expressly provides that only patent licenses that were granted as of March 1, 2000, shall continue after that date.[7] Again, because GDM and Memorex were not granted licenses as of March 1, 2000, they cannot claim valid licenses under the CLA.

### 2.      The Definition of "Subsidiary"

The Court also finds that the CLA's definition of "subsidiary" does not include companies that were not Imation subsidiaries prior to March 1, 2000.  The CLA defines "subsidiary" as "any corporation, firm, partnership, proprietorship or other form of business organization as to which the party now or hereafter has more than a fifty percent

---

[7]      Imation also asserts that Philips is asking the Court to interpret the CLA to read that Imation's license did not expire on March 1, 2000, but that the direct license to its subsidiaries did expire.  This is not the case.  The parties agree that Imation and its subsidiaries that were licensed under the CLA as of March 1, 2000, continue to be validly licensed even after expiration of the CLA.  Philips asserts that subsidiaries formed *after* the March 1, 2000, expiration date are not validly licensed now because they had not been granted licenses as of March 1, 2000.

(50%) ownership interest." (CLA Art. 1, § 13.)  The Court's interpretation of the definition of "subsidiary" centers on the meaning of the phrase "now or hereafter."  The Court concludes that the only reasonable reading of this phrase is that it refers to any time up until the expiration of the agreement.

First, by its explicit terms, the CLA expires on March 1, 2000.  There is only one exception to that expiration date and that is that "any patent license that has been granted under Article 2 shall continue thereafter for the term provided in ARTICLE 3." (CLA Art. 4.)  The Court finds that the expiration provision, therefore, applies to the definition of "subsidiary."  When the expiration provision and the "now and hereafter" language are read together, it is clear that the definition of "subsidiary" is limited temporally by the term of the CLA.  Any other reading would contradict the clear expiration language in the CLA.

Although not controlling, the Court finds the cases cited by Philips to be persuasive.  For example, in *GE Engine Services v. UNC Holding I, Inc.*, 250 F. Supp. 2d 1237 (C.D. Cal. 2001), the court considered an action for declaratory judgment that required the interpretation of various insurance contracts.  In *GE Engine*, the plaintiffs asserted that they should be covered by the defendant insurance companies because their predecessors were named insureds under policies issued by the defendants.  The court looked at three categories of insurance policies, one of which contained "hereafter" language regarding the coverage of subsidiaries.  For example, one insurance policy defined "Named Insured" to include companies that "are owned or financially controlled . . . as now exist *or hereafter constituted.*"  *GE Engine*, 250 F. Supp. 2d at 1242.  In

interpreting the relevant contracts, the court concluded that the contracts did *not* cover after acquired subsidiaries of the insured, reasoning that the insured "could not reasonably expect coverage for its after acquired subsidiaries." *Id*. at 1244.  Although this case deals with insurance contracts, and not patent licenses, the reasoning is still instructive.

Similarly, in *Total Waste Management Corp. v. Commercial Union Ins. Co.*, the court concluded that certain insurance policies did not provide coverage for an entity acquired by the named insured after the policies' expiration and which entity allegedly caused damage during the policies' periods.  857 F. Supp. 140, 150 (D.N.H. 1994).  While the policies at issue did not incorporate "hereafter" language, the court rejected an interpretation of the policies that "would mean that even though the policies had expired, any time [the insured] acquired an entity, the policies would spring back into effect." *Id.* The court reasoned that the interpretation would, in part, contradict the plain language of the effective dates of the policies.  The same can be said of Imation's proposed interpretation here.

Imation maintains that other courts have ruled that "hereafter" language unambiguously extends licensing rights into the future without limitation.  For example, Imation cites to *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 172-73 (N.Y. 2002).  In *Greenfield*, the members of a singing group sued their record producer for the breach of a contract entered into in the 1960s that granted the defendants ownership of "[a]ll recordings made hereunder" and the "right to make phonograph records, tape recordings or other reproductions of the performances embodied in such recordings by any method

*now or hereafter known*, and to sell and deal in the same . . . ." *Id*. at 170 (emphasis added).   In *Greenfield*, the plaintiffs conceded that the contract unambiguously gave defendants unconditional ownership rights to the master recordings, but argued that the contract did not give defendants the right to exploit those recordings in new markets or mediums since the contract was silent on those topics.  *Id*.  The court relied on "well-established precedent" that "[a] broad grant of ownership rights, coupled with the absence of a reservation clause" includes the right of defendants to "use the work in any manner . . . unless those rights are specifically limited."  *Id*. at 171-72.   The facts of *Greenfield* are distinguishable from those of the present case.  The contract in *Greenfield* provided for the full transfer of ownership rights to a musical recording.  Thus, the court was confronted with the issue of whether rights that the parties had obtained during the contract included methods of reproduction developed after the contract expired, and in particular where the contract explicitly provided for the right to make reproductions "by any method *now or hereafter known*."  Here, the Court is confronted with a cross-license agreement which, by its explicit terms and with one exception, expired on March 1, 2000.  Neither GDM nor Memorex were licensed under the CLA at the time of expiration.  Therefore, this case does not involve continuing rights of GDM or Memorex.  Nothing in *Greenfield* suggests that rights that have not been granted during the term of an agreement can spring back into existence for non-parties after the agreement has expired.

The Court further notes that Article 12 of the CLA also contains "hereafter" language in the definition of "licensed patents."  Both Imation and Philips agree that the parties intended that Article 12 be limited by the March 1, 2000 expiration date.  Philips

asserts that the "hereafter" language in the definitions of "subsidiary" and "licensed patents" both refer to events occurring during the term of the CLA.  Imation asserts, however, that the CLA contains a clear indication that parties intended different meanings between the term "hereafter" as it is used in those two definitions.  In particular, Imation asserts that the definition of "licensed patents" is expressly limited by Article 4's expiration date because it is cross-referenced in Article 1, section 12(3); and conversely that the definition of "subsidiary" does not contain any such explicit restriction and therefore is not similarly limited.

The Court disagrees with Imation's reading of the CLA and concludes that the "hereafter" language in both the definition of "subsidiary" and "licensed patents" refers to a period of time limited by the contract term.  The definition of "licensed patents" is not inconsistent with such a reading.   The definition of "licensed patents" is not limited by the CLA's expiration date solely because it is cross-referenced in section 12(3).  The language of the CLA plainly contemplates three separate requirements for patents to be licensed under the CLA.  First, a patent must be "owned or controlled by the granting party or any of its SUBSIDIARIES such that such party or its SUBSIDIARIES *now has or hereafter obtains* the right to grant the licenses within the scope of the Agreement." (CLA Art.1 §12(1) (emphasis added).)  Second, a patent must "relate to optical or magneto-optical information storage and retrieval technology."  (CLA Art. 1 §12(2).) And third, a patent must "have a filing date . . . on or before the expiration of this Agreement as set forth in Article 4, herein."  (CLA Art. 1 § 12(3).)  The fact that the expiration date is referenced in section 12(3) serves to limit the pool of patents based on

their filing or priority dates and does not establish limits based on patent ownership. And section 12(1) covers ownership requirements for "licensed patents" under the CLA. Based on the language of section 12(1), and in light of the CLA's general expiration provision, the Court concludes that a patent must have been "owned or controlled" by a granting party or a subsidiary as of March 1, 2001.[8]

Because the Court finds that the CLA's definition of subsidiary does not encompass subsidiaries created after March 1, 2000, the Court also determines that GDM and Memorex are not validly licensed under the CLA.

For the reasons stated above, the Court grants Philips' motion for judgment on the pleadings as to Counts Three and Four of Imation's Complaint and the First Cause of Action of Philips' Amended Answer to Complaint, Counterclaims and Third-Party Complaint.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.    Philips Motion for Judgment on the Pleadings (Doc. No. 122) is **GRANTED**.

---

[8]    Moser Baer argues that the "hereafter" language in section 12(1) extends the definition of "licensed patents" to those acquired after March 1, 2000. The Court rejects this argument. As discussed above, this section is limited by the CLA's general expiration provision. This reading does not render section 12(3) superfluous. Even though a patent might satisfy section 12(3) by having a filing or priority date preceding March 1, 2000, it might not satisfy section 12(1) if, for example, it was not acquired until after the general expiration provision. In this sense, both sections 12(2) and 12(3) further define those patents that satisfy section 12(1). Moser Baer's interpretation would allow the CLA to essentially continue for many years beyond its expiration.

2.      Counts Three and Four of the Complaint (Doc. No. 1) are

**DISMISSED**.

3.      Judgment is entered in favor of Philips on the First Cause of Action

of the Amended Answer to Complaint, Counterclaims and Third-Party Complaint

(Doc. No. 83).

Dated:  November 26, 2008          s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   Judge of United States District Court